PER CURIAM.
Ashley Toye appeals the summary denial of her motion filed pursuant to Florida Rules of Criminal Procedure 3.800(a) and 3.850, in which she claimed that the decision in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), rendered her mandatory sentence of life in prison without the possibility of parole illegal because she was a juvenile when she committed her offenses. The postconviction court dismissed her motion as untimely, relying on the Third District’s decision in Geter v. State, 115 So.3d 375, 385 (Fla. 3d DCA 2012) (en banc), which held that the Miller decision does not apply retroactively. The First District reached the same conclusion in Gonzalez v. State, 101 So.3d 886, 888 (Fla. 1st DCA 2012). However for the reasons that follow, we conclude that Miller applies retroactively, certify conflict with Geter and Gonzalez, and reverse the postconviction court’s order.[1]
Background
A jury found Toye guilty of two counts of first-degree felony murder, two counts of kidnapping, two counts of aggravated assault, and one count of tampering with evidence based on events that occurred when Toye was seventeen years old. The trial court sentenced Toye to the required sentence of life in prison without the possibility of parole for the felony murders, see § 775.082(1), Fla. Stat. (2006), and to concurrent sentences totaling a term of twen *542 ty-five years for the other charges. In 2008, before the Supreme Court issued its decision in Miller, this court affirmed Toye’s judgments and sentences per curiam. Toye v. State, 988 So.2d 1104 (Fla. 2d DCA 2008) (table decision).
After the Miller decision was issued, Toye filed her postconviction motion claiming that her life sentence was illegal. The postconviction court denied the motion because it was filed more than two years after Toye’s judgment and sentence became final. It also found that Miller did not apply retroactively and so did not constitute an exception to the two-year window of rule 3.850. We reverse, however, because we hold that the rule established in Miller — that a mandatory sentence of life imprisonment without the possibility of parole imposed on a juvenile homicide offender violates the Eighth Amendment— should be given retroactive effect.

Miller v. Alabama

In Miller, the Supreme Court held that “the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.” 132 S.Ct. at 2469. Miller focused heavily on the concept of proportionality and relied on two lines of Eighth Amendment cases: (1) those that categorically banned “sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty,” such as Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (barring life imprisonment without the possibility of parole for juveniles convicted of nonhomicide offenses), and Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (banning the death penalty for all juvenile offenders); and (2) those that prohibited the mandatory imposition of the death penalty and demanded individualized sentencing considerations before imposing the death penalty, such as Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (requiring that sentencing authorities not be precluded from considering the defendant’s character and circumstances of the offense as mitigating circumstances for imposing the death penalty). Miller, 132 S.Ct. at 2463-64. As these cases demonstrate, the idea that “death is different” and the concept of proportionality are particularly applicable to juvenile offenders vis-a-vis sentencing.
In fact, the Miller Court acknowledged that juveniles are “constitutionally different from adults.” Id. at 2464. They are less mature, less responsible, and concomitantly more reckless and impulsive. Furthermore, juveniles sentenced to life in prison will serve a greater percentage of their lives in confinement than will an adult. These factors must be taken into account when sentencing juveniles, and they serve to bar mandatory sentences that would absolutely require juveniles to spend the remainder of their lives in prison. Id. at 2464-69. Hence, a juvenile who commits a homicide after Miller is entitled to have the court consider potentially mitigating factors before it may impose a life sentence without parole. However, only if Miller applies retroactively can Toye’s sentence be revisited.

Retroactivity in Florida: The Witt Analysis

In determining whether a Supreme Court decision applies retroactively, Florida courts first look to the content and language of the opinion itself. Barrios-Cruz v. State, 63 So.3d 868, 871 (Fla. 2d DCA 2011). Because the Miller opinion is silent on retroactivity,[2] we must apply the *543 three-prong test set forth in Witt v. State, 387 So.2d 922 (Fla.1980), to determine whether to apply Miller retroactively. See Johnson v. State, 904 So.2d 400, 408-09 (Fla.2005).[3]
Witt held that a change in decisional law that requires reversing a once-valid conviction and sentence applies retroactively only if it “(a) emanates from [the Florida Supreme] Court or the United States Supreme Court, (b) is constitutional in nature, and (c) constitutes a development of fundamental significance.” Witt, 387 So.2d at 931. There is no question that the first two prongs of the Witt analysis are satisfied in this case; we must focus solely on whether the Miller decision constitutes a development of fundamental significance.

Developments of Fundamental Significance

Under Witt, decisional developments of fundamental significance fall within two broad categories: (1) those that ‘“place beyond the authority of the state the power to regulate certain conduct or impose certain penalties,’ and (2) ‘those ... which are of sufficient magnitude to necessitate retroactive application.’ ” Barrios-Cruz, 63 So.3d at 871 (quoting Witt, 387 So.2d at 929). In one sense, Miller would not seem to fall within the first category because it does not affect the State’s power to impose certain penalties, i.e., a sentence of life without parole, because juvenile homicide offenders can still receive such a sentence under a discretionary sentencing scheme that takes into consideration the offender’s “youth and attendant characteristics.” Miller, 132 S.Ct. at 2471. But the decisions in Miller and Roper effectively invalidated section 775.082(1), Florida Statutes (2012), as applied to juveniles convicted of a capital felony, such as Toye who was sentenced in 2006 under the identical statute. Hence, Miller invalidated the only statutory means for imposing a sentence of life without the possibility of parole on juveniles convicted of a capital felony. Cf Chambers v. State, 831 N.W.2d 311, 343 (Minn.2013) (Page, J. dissenting) (arguing that since the Minnesota legislature made the sentences mandatory, sentencing authorities did not have authority from the legislature to conduct individualized determinations or exercise discretion of any kind). Arguably, Miller has dramatically disturbed the power of the State of Florida to impose a nondiscretionary sentence of life without parole on a juvenile convicted of a capital felony, and thus the decision falls within this first category of developments of fundamental significance.

Stovall-Linkletter Test

It is even more apparent that Miller falls within the second category of developments of fundamental significance — those “which are of sufficient magnitude to necessitate retroactive application” under the *544 three-part Stovall-Linkletter[4] test. Witt, 387 So.2d at 929. That three-fold test considers: “(a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of justice of a retroactive application of the new rule.” Id. at 926.
In developing the second category, the Florida Supreme Court adapted the then-current ABA Standards Relating to Post-Conviction Remedies. See id. at 929 n. 25. Under the ABA standards, Miller would apply retroactively because it is a significant change in the law that forbids sentencing authorities from ignoring a juvenile’s “diminished culpability and heightened capacity for change,” thereby lessening the risk of disproportionate punishment. 132 S.Ct. at 2469. But because the sentencing authority cannot consider a juvenile’s youth and attendant circumstances without an evidentiary hearing, Miller not only changed rules of procedure but also afforded a class of offenders the right to individualized sentencing determinations in accordance with the proportionality doctrine undergirding the Eighth Amendment’s prohibition against cruel and unusual punishment. Therefore, Miller is inarguably “a significant change in law, whether substantive or procedural, applied in the process leading to [the] applicant’s conviction or sentence.” Witt, 387 So.2d at 929 n. 25 (quoting ABA Standards Relating to Post^Conviction Remedies § 2.1(a)(vi) (Approv. Draft 1968)). In addition, each part of the Stovall-Linkletter test supports this conclusion.

a. The Purpose to be Served

First, the purpose to be served by Miller weighs heavily in favor of applying it retroactively. Miller’s discussion of individualized attendant circumstances, such as the juvenile’s age, the juvenile’s family and home environment, the circumstances of the homicide, and the extent of the juvenile’s participation in the homicide, makes clear that these particular considerations could not be generically predetermined by the legislature. 132 S.Ct. at 2469. The Court guaranteed this right by requiring courts to consider — when they previously were not required to do so — each specific offender’s youth and attendant circumstances before imposing a sentence of life without the possibility of parole so as to avoid cruel and unusual punishment under the Eighth Amendment. Thus, Miller does far more than “cast serious doubt on the veracity or integrity of the original trial proceeding,” Witt, 387 So.2d at 929, because no original constitutionally meaningful sentencing hearing was held in the first place. Accordingly, we must reject the State’s argument in this case, as well as the conclusions in Geter and Gonzalez, that Miller should be characterized as a mere evolutionary refinement in criminal procedure that should not be applied retroactively.
In our view, the State and the First and Third Districts fail to recognize that either procedural or substantive developments in the law can be of a fundamental significance, and either can apply retroactively.[5] In developing its retroactivity *545 analysis, Witt acknowledged the competing interests in “ensuring finality of decisions on the one hand, and ensuring fairness and uniformity in individual cases on the other within the context of post-conviction relief from a sentence of death.” 387 So.2d at 925. In this balance, Witt recognized that changes in the law that “drastically alter the substantive or procedural underpinnings of a final conviction and sentence” outweigh the State’s interest in finality of litigation. Id. Without question, Miller is just such a change in the law because it requires consideration of the nature of the offense committed and the juvenile’s individual attendant circumstances as part of the application of the Eighth Amendment’s prohibition against cruel and unusual punishment. Although Miller may have described its holding as a requirement that sentencing authorities follow a certain process, 132 S.Ct. at 2471, the “process” that the Supreme Court described flows from Roper, Graham, and the Supreme Court’s death penalty jurisprudence, and it is necessary to uphold the Eighth Amendment’s proportionality requirement. Miller, 132 S.Ct. at 2471. In this context, the word “process” clearly referenced the creation of a new substantive right for juvenile offenders that did not previously exist.
The Third District’s comparison of the purpose served by Miller to the purposes discussed in Hughes v. State, 901 So.2d 837 (Fla.2005) (holding that Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), does not apply retroactively), and Hernandez v. State, 61 So.3d 1144 (Fla. 3d DCA 2011) (holding that Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), does not apply retroactively), is misplaced because Hughes and Hernandez both concern a defendant’s Sixth Amendment rights. See Geter v. State, 115 So.3d 385, 394-97 (Fla. 3d DCA 2013) (en banc) (Ernas, J., dissenting) (distinguishing the retroactivity of Apprendi’s holding that the Sixth Amendment guarantees that the jury, rather than the judge, determine any fact that would expose the defendant to a sentence beyond the statutory maximum); Chambers, 831 N.W.2d at 336 (Anderson, J., dissenting) (distinguishing the retroac-tivity of Eighth Amendment rights from Sixth Amendment rights, such as Padilla ). Padilla concerned counsel’s duty to inform defendants of the potential effect of a conviction upon their immigration status, Hernandez v. State, 124 So.3d 757, 759 (Fla.2012), a matter unrelated to the veracity and integrity of the judgment in the case in which counsel represented the defendant. See Witt, 387 So.2d at 929. And unlike Apprendi, Miller does not simply shift the fact-finding determination from the judge to the jury. See Apprendi, 530 U.S. at 483, 120 S.Ct. 2348. Rather, Miller creates a new right to present mitigating circumstances when no such right previously existed. Chambers, 831 N.W.2d at 336-37 (Anderson, J., dissenting). The creation of this new right militates in favor of applying Miller retroactively.

b. Reliance on the Old Rule

Second, retroactive application of Miller does not cast a large cloud of uncertainty over the finality of judgments as have *546 other decisions retroactively affecting a defendant’s trial or conviction. The law that can no longer be enforced after Miller, section 775.082(1), Florida Statutes (2012), had been in effect since May 25,1994. Ch. 94-228, § 1, Laws of Fla. (1994). As recognized in Judge Emas’ dissent in Geter, only 266 juvenile homicide offenders are serving mandatory sentences of life in prison without the possibility of parole. 115 So.3d at 398 (citing Human Rights Watch, State Distribution of Youth Offenders Serving Juvenile Life Without Parole (2009), available at http://www.hrw. org/news/2009/10/02/state-distribution-juvenileoffenders-serving-juvenile-life-without-parole)). Thus, the number of cases relying on the old rule is relatively small.
Additionally, the rule at issue concerns only the juvenile’s sentence and the conditions under which the court may impose a sentence of life without the possibility of parole. Id. The juvenile’s conviction remains intact. Hence, on remand, courts are limited to resentencing the juvenile after applying the appropriate considerations. Cf. Witt, 387 So.2d at 926 (“[F]i-nality will be illusory if each convicted defendant is allowed the right to relitigate his first trial upon a subsequent change of law.” (emphasis added)). Moreover, Miller ’s retroactive -application would comport with prior Florida decisions that applied the Supreme Court’s prohibition of the mandatory imposition of the death penalty retroactively, because sentences of death and life without the possibility of parole are the harshest sentences that can be imposed. Geter, 115 So.3d at 393 (Emas, J., dissenting).[6]
There is currently some debate among the district courts regarding the appropriate sentence for juveniles whose life without parole sentence did not become final until after the Supreme Court decided Miller. Compare Washington v. State, 103 So.3d 917, 922 (Fla. 1st DCA 2012) (Wolf, J., concurring) (suggesting the trial court “impose a sentence of a term of years up to life without [the] possibility of parole”) with Horsley v. State, 121 So.3d 1130, 1132 (Fla. 5th DCA) (reviving the previous version of the statute, section 775.082(1), Florida Statutes (1993), and imposing a sentence of life with the possibility of parole after twenty-five years), review granted, No. SC13-1938, 2013 WL 6224657 (Fla. Nov. 14, 2013). However, this single consideration, applied retroactively to a small number of sentences, would not “destroy the stability of the law, [or] render punishments uncertain and therefore ineffectual.” Witt, 387 So.2d at 929. This is especially true because the district courts are already addressing this issue for juveniles sentenced to life without the possibility of parole after Miller issued. Thus, this factor likewise militates in favor of retroactivity.
c. Effect on the Administration of Justice
Third, applying Miller retroactively would have little effect on the administration of justice. Judge Emas’ dissent points out that the 266 defendants to *547 whom Miller could retroactively apply constitutes only 0.26% of Florida’s inmate population. Geter, 115 So.3d at 398-99. And as noted above, the only additional burden on the judicial system would be resentencing these 266 juveniles upon receipt of a postconviction motion. Moreover, this burden will not be onerous in terms of determining what sentence to impose as the appellate courts are already addressing this issue for defendants whose sentences were pending when Miller issued. See Horsley, 121 So.3d at 1132.
The Third District’s concern about the burden upon the courts, which is echoed by the State in its response in this case, is overstated and overlooks the distinction between disturbing a longstanding conviction and revisiting the sentence imposed upon a juvenile who, even if convicted years ago, remains imprisoned. Thus, this third factor also militates in favor of retro-activity.

Conclusion

In sum, the Supreme Court’s decision in Miller constitutes a development of fundamental significance because it removes the authority of the State to impose a mandatory sentence of life in prison without the possibility of parole on juvenile homicide offenders and because it is a change in the law of sufficient magnitude under the Sto-vall-Linkletter test. Therefore, we hold that Miller applies retroactively to provide postconviction relief for juvenile homicide offenders sentenced to mandatory terms of life in prison without the possibility of parole. Accordingly, we reverse the post-conviction court’s order denying Toye’s motion, remand for the circuit court to resentence Toye on counts one and two in accordance with the requirements of Miller, and certify conflict with Geter and Gonzalez. Since the parties have not argued — either below or in this appeal— what the proper range of sentencing options on remand should be, we decline to do so on our own in this appeal. See, e.g., Anheuser-Busch Cos. v. Staples, 125 So.3d 309, 312 (Fla. 1st DCA 2013) (noting that an appellate court is “not at liberty to address issues that were not raised by the parties”). At the resentencing hearing, the postconviction court should entertain argument from the parties on this issue.
Reversed and remanded; conflict certified.
LaROSE, J., Concurs.
VILLANTI, J., Concurs in part and dissents in part.
ALTENBERND, J., Concurs with opinion.

. We note that the First District recently certified the issue to the Florida Supreme Court as a question of great public importance, and review has been granted in Falcon v. State, 111 So.3d 973 (Fla. 1st DCA), review granted, No. SC13-865, 2013 WL 6978507 (Fla. June 3, 2013). See also Smith v. State, 113 So.3d 1058 (Fla. 1st DCA 2013).

. In our view, Miller does not explicitly hold that its decision applies retroactively. Thus, we cannot accept Chief Judge Benton’s theory in his concurring opinion in Falcon v. State, *543 111 So.3d 973, 975 (Fla. 1st DCA 2013), that reading both Miller and the companion case of Jackson v. Norris, 2011 Ark. 49, 378 S.W.3d 103 (2011), rev'd, Miller, - U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407, together makes it clear that the Court intended Miller to apply retroactively because the Court remanded Jackson’s case for resentencing even though his judgment and sentence were final.

. In contrast, the federal courts and most state courts apply the retroactivity test articulated in Teague v. Lane, 489 U.S. 288, 311-13, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion) (adopted by Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), abrogated on separate grounds by Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)). See abo Danforth v. Minnesota, 552 U.S. 264, 266, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008) (holding that state courts may "give broader effect to new rules of criminal procedure than is required by [Teague ]”).

. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

. In reaching its conclusion that Miller is a mere procedural change in the law that should not apply retroactively, Geter relied on other Third District cases which incorrectly applied the "purpose to be served” requirement. 115 So.3d at 378-79. Geter quoted the Third District's previous retroactivity analysis of Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), but added the requirement that miscarriages of justice requiring retroactive application can only apply to "substantive criminal law.” *545 115 So.3d at 378-79 (quoting Hernandez v. State, 61 So.3d 1144, 1150 (Fla. 3d DCA 2011)). However, the Florida Supreme Court decision relied on in Hernandez did not limit retroactivity to substantive changes in the law. See Hughes v. State, 901 So.2d 837 (Fla.2005) (holding that Apprendi v. Hew Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), does not apply retroactively). Further, the Florida Supreme Court did not create this distinction when affirming the Third District’s decision in Hernandez and holding that Padilla does not apply retroactively. See Hernandez v. State, 124 So.3d 757 (Fla.2012).

. In accordance with our view, we note that some individual district judges have also suggested that Miller should apply retroactively because the precedent upon which the Supreme Court relied in Miller applied retroactively. See, e.g., Geter, 115 So.3d at 394 (Emas, J., dissenting); Chambers, 831 N.W.2d at 338 (Anderson, J., dissenting) (same); see also State v. Ragland, 836 N.W.2d 107, 116 (Iowa 2013) ("If a substantial portion of the authority used in Miller has been applied retroactively, Miller should logically receive the same treatment.”). Miller "flows straightforwardly from our precedents; specifically, the principle of Roper, Graham, and our individualized sentencing cases that youth matters for purposes of meting out the law's most serious punishments.” 132 S.Ct. at 2471.