# Supreme Court of Florida

_____

No. SC13-865
_____

**REBECCA LEE FALCON,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[March 19, 2015]

PARIENTE, J.

The issue in this case is whether the United States Supreme Court's decision in Miller v. Alabama, 132 S. Ct. 2455, 2469 (2012)—which "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders"—applies to juvenile offenders whose convictions and sentences were already final at the time Miller was decided. Considering this issue, and in reliance on its prior decision in Gonzalez v. State, 101 So. 3d 886, 888 (Fla. 1st DCA 2012), the First District Court of Appeal concluded in Falcon v. State, 111 So. 3d 973, 973 (Fla. 1st DCA 2013), that Miller did not apply retroactively to juvenile

offenders seeking to challenge the constitutionality of their sentences, pursuant to Miller, through collateral review.

All of Florida's other district courts of appeal have addressed this same issue, with conflicting results. The Third and Fifth District Courts of Appeal have concluded, consistent with the First District, that Miller is not retroactive, while the Second and Fourth District Courts of Appeal have held, to the contrary, that it is. Compare Geter v. State, 115 So. 3d 375, 385 (Fla. 3d DCA 2012), and Anderson v. State, 105 So. 3d 538, 538 (Fla. 5th DCA 2013) (table decision), with Toye v. State, 133 So. 3d 540, 547 (Fla. 2d DCA 2014), and Cotto v. State, 141 So. 3d 615, 617 (Fla. 4th DCA 2014).

Noting the split of state and federal authority on the issue of whether Miller should be given retroactive effect, the First District in Falcon certified the following question of great public importance for this Court's review:

> WHETHER THE RULE ESTABLISHED IN MILLER V. ALABAMA, 132 S. Ct. 2455, 2460 (2012), "THAT MANDATORY LIFE WITHOUT PAROLE FOR THOSE UNDER THE AGE OF 18 AT THE TIME OF THEIR CRIMES VIOLATES THE EIGHTH AMENDMENT[ ]," SHOULD BE GIVEN RETROACTIVE EFFECT?

Falcon, 111 So. 3d at 973-74. We accepted jurisdiction to resolve this important issue that has an impact on many cases pending in our state courts. See art. V, § 3(b)(4), Fla. Const.

Applying this Court's test for retroactivity, as articulated in Witt v. State, 387 So. 2d 922, 931 (Fla. 1980), we conclude that the rule set forth in Miller constitutes a "development of fundamental significance" and therefore must be given retroactive effect.[1] We would reach the same conclusion if we were to apply the test for retroactivity set forth in Teague v. Lane, 489 U.S. 288, 307 (1989).

Accordingly, we answer the certified question in the affirmative and hold that the Supreme Court's decision in Miller applies retroactively to juvenile offenders whose convictions and sentences were final at the time Miller was

---

1. Although state and federal courts are split on the issue of the retroactive application of Miller, our conclusion finds support in the recent trend of courts across the country holding that Miller applies retroactively, even under the less expansive test for retroactivity applied under federal law and by many states pursuant to Teague v. Lane, 489 U.S. 288 (1989). See, e.g., In re Pendleton, 732 F.3d 280, 282 (3d Cir. 2013) (concluding after "extensive briefing" that the defendants had "made a prima facie showing that Miller is retroactive"); Johnson v. United States, 720 F.3d 720, 721 (8th Cir. 2013) (noting that the "government here has conceded that Miller is retroactive"); People v. Davis, 6 N.E.3d 709, 722 (Ill. 2014) (holding that Miller applies retroactively); State v. Ragland, 836 N.W.2d 107, 117 (Iowa 2013) (retroactive); Diatchenko v. Dist. Att'y for Suffolk Dist., 1 N.E.3d 270, 281 (Mass. 2013) (retroactive); Jones v. State, 122 So. 3d 698, 703 (Miss. 2013) (retroactive); State v. Mantich, 842 N.W.2d 716, 732 (Neb. 2014) (retroactive); Petition of State of N.H., 103 A.3d 227, 236 (N.H. 2014) (retroactive); Aiken v. Byars, 765 S.E.2d 572, 575 (S.C. 2014) (retroactive); Ex parte Maxwell, 424 S.W.3d 66, 68 (Tex. Crim. App. 2014) (retroactive); State v. Mares, 335 P.3d 487, 508 (Wyo. 2014) (retroactive). But see Johnson v. Ponton, No. 13-7824, 2015 WL 924049, at *5 (4th Cir. Mar. 5, 2015) (holding that Miller does not apply retroactively); In re Morgan, 713 F.3d 1365, 1367-68 (11th Cir. 2013) (not retroactive); State v. Tate, 130 So. 3d 829, 844 (La. 2013) (not retroactive); Chambers v. State, 831 N.W.2d 311, 331 (Minn. 2013) (not retroactive); Commonwealth v. Cunningham, 81 A.3d 1, 10-11 (Pa. 2013) (not retroactive).

decided. Under Florida Rule of Criminal Procedure 3.850(b)(2), any affected juvenile offender shall have two years from the time the mandate issues in this case to file a motion for postconviction relief in the trial court seeking to correct his or her sentence pursuant to Miller.

Based on our decision in Horsley v. State, No. SC13-1938, slip op. at 3 (Fla. Mar. 19, 2015), we conclude that the appropriate remedy for any juvenile offender whose sentence is now unconstitutional under Miller is a resentencing pursuant to the framework established in legislation enacted by the Florida Legislature in 2014. See ch. 2014-220, Laws of Fla. We therefore quash the First District's decision and remand this case for resentencing in conformance with chapter 2014-220, Laws of Florida, which has been codified in sections 775.082, 921.1401, and 921.1402 of the Florida Statutes.

## FACTS AND BACKGROUND

Rebecca Lee Falcon was fifteen years old in late 1997 when she took part in an attempted robbery that resulted in the death of a cab driver. According to an affidavit from a clinical psychologist specializing in adolescent development, who conducted several evaluations and interviews with Falcon in the years after the crime, Falcon's childhood leading up to that point had been traumatic, including having suffered sexual and emotional abuse from her stepfather and continued sexual exploitation from peers at school. By the time of the crime, Falcon asserted

that she was experiencing "low self-esteem," had started smoking marijuana, and was "desperate for attention" such that she would "do things just for approval."

On the night of the crime, Falcon reported that her boyfriend, with whom she professed to have fallen in love because he was "the first person who seemed to care for" her, ended their relationship since he was seeing someone else. Hoping to "sleep off her sadness," she consumed alcohol and became intoxicated. Falcon stated that, while drunk, she received an invitation to sneak out of the house and made an "impulsive" decision to go because she "was still not popular" and wanted "to be accepted."

Asserting that she was trying "to fit in" and act "brave" to mask her "true feelings of insecurity," Falcon "agreed to the idea of a robbery," expecting to "get the money and go" as she claimed she had seen in "the movies." However, when the robbery did not proceed as expected, she alleged that she "panicked" and, though not "want[ing] to kill someone," ultimately participated in causing the shooting death of the attempted robbery victim.

Falcon was convicted of first-degree murder and attempted armed robbery with a firearm and sentenced to life imprisonment without the possibility of parole for the murder and 207.5 months in prison for the attempted armed robbery. Under the version of the relevant Florida statute then in effect, section 775.082(1), Florida Statutes (1997), Falcon's sentence of life in prison without the possibility of parole

for the first-degree murder was mandatory.[2]  Her convictions and sentences were affirmed on direct appeal by the First District in 2001.  See Falcon v. State, 781 So. 2d 1086, 1086 (Fla. 1st DCA 2001) (table decision).

More than a decade after her convictions and sentences became final, the United States Supreme Court issued its decision in Miller, 132 S. Ct. at 2469, holding that the Eighth Amendment's prohibition on cruel and unusual punishment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."  There is no dispute following Miller that the statute under which Falcon was sentenced for first-degree murder, which mandated life in prison without the possibility of parole, is unconstitutional as applied to juvenile offenders.

Subsequently, in August 2012, Falcon filed a motion for postconviction relief and to correct an illegal sentence, asserting that her mandatory sentence of

_____

2.  The statute under which Falcon was sentenced provided in pertinent part as follows:

> A person who has been convicted of a capital felony shall be punished by death if the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death, otherwise such person shall be punished by life imprisonment and shall be ineligible for parole.

§ 775.082(1), Fla. Stat. (emphasis added).  Because she was a juvenile under the age of eighteen at the time of the murder, Falcon is ineligible for the death penalty.  See Roper v. Simmons, 543 U.S. 551, 568 (2005).

life imprisonment without the possibility of parole is unconstitutional under Miller and that she is therefore entitled to be resentenced. In her motion, Falcon argued that Miller should be applied retroactively and that the trial court must vacate her life sentence and, pursuant to Miller, conduct an individualized resentencing hearing in order to take into account her age and age-related characteristics in imposing an appropriate sentence.

The trial court denied Falcon's motion on the basis that the First District had already held, in Gonzalez, 101 So. 3d at 888, that Miller did not apply retroactively. Specifically, in Gonzalez, the First District concluded, consistent with a prior decision from the Third District, that Miller was a procedural, rather than substantive, change in the law and that retroactive application of Miller "would greatly affect the administration of justice" by opening the floodgates for postconviction motions. Id. at 887 (citing Geter, 115 So. 3d at 383).

Falcon appealed the trial court's denial of her motion for postconviction relief to the First District, which affirmed the denial of relief based on its previous decision in Gonzalez. Falcon, 111 So. 3d at 974. However, the First District certified a question of great public importance to this Court as to whether Miller should be applied retroactively. Id.

Chief Judge Benton concurred in the First District's decision on the basis of the First District's Gonzalez precedent, but wrote separately to explain that, in his

view, the Supreme Court's decision in Miller should be applied retroactively. In support of this conclusion, Chief Judge Benton relied on the fact that the Supreme Court had granted relief to two separate defendants in its Miller decision, Evan Miller of Alabama and Kuntrell Jackson of Arkansas, whose cases were consolidated and argued in tandem. Id. at 974 (Benton, C.J., concurring).

Miller, the defendant in the Alabama case, initially appealed his conviction and sentence directly to the Alabama Court of Criminal Appeals, and then obtained further, direct review in the United States Supreme Court. However, "Jackson, the defendant in the Arkansas case—like the appellant in our case—had reached the end of the line on direct appeal, without obtaining any relief." Id. (footnote omitted). Only after Jackson did not prevail in challenging his sentence on direct appeal and he sought collateral relief, which the state courts denied, did the United States Supreme Court grant review in Jackson's case and ultimately provide him relief. Based upon the Supreme Court's treatment of Jackson, Chief Judge Benton concluded that Miller should be applied retroactively. Id. at 975-76.

## ANALYSIS

The question certified by the First District in this case asks whether the United States Supreme Court's decision in Miller, 132 S. Ct. at 2469, which held that the Eighth Amendment's prohibition on cruel and unusual punishment "forbids a sentencing scheme that mandates life in prison without possibility of

- 8 -

parole for juvenile offenders," should be applied retroactively. In answering the certified question, we undertake the following analysis. First, we summarize the Supreme Court's decision in <u>Miller</u> and explain its relation to the Supreme Court's prior decision in <u>Graham v. Florida</u>, 560 U.S. 48 (2010). Then, with this background established, we analyze whether <u>Miller</u> should be given retroactive effect under this Court's retroactivity standard, as articulated in <u>Witt</u>, 387 So. 2d 922. Finally, after concluding that the Supreme Court's decision in <u>Miller</u> should be given retroactive effect, we explain the appropriate remedy for trial courts to employ when applying <u>Miller</u> retroactively to cases on collateral review.

## I. The Supreme Court's Decision in <u>Miller</u> & Its Relation to <u>Graham</u>

A discussion of <u>Miller</u> appropriately begins with the Supreme Court's prior decision in <u>Graham</u>, which laid the jurisprudential foundation upon which the subsequent <u>Miller</u> decision was based. In <u>Graham</u>, 560 U.S. at 82, the Supreme Court held that a sentence of life without the possibility of parole violates the Eighth Amendment's prohibition on cruel and unusual punishment when imposed on a juvenile offender convicted of a nonhomicide offense. In deciding <u>Graham</u>, the Supreme Court explained that juveniles are fundamentally different than adults for sentencing purposes, noting that juveniles are more vulnerable to negative outside forces than adults, are incapable of engaging in conduct that is as morally reprehensible as adults, and possess a greater potential for change than adults. <u>Id.</u>

at 67-68. Based upon these differences, the Supreme Court established a categorical rule that bars the imposition of a sentence of life imprisonment without the possibility of parole in all circumstances for every juvenile offender convicted of a nonhomicide offense. Id. at 82.

Subsequently, in Miller, the Supreme Court reviewed two cases in which defendants were sentenced to mandatory terms of life imprisonment without the possibility of parole for homicide offenses committed while they were juveniles. The Supreme Court reversed the sentences imposed and held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " Id. Although the Supreme Court did not categorically foreclose a sentencer's ability to impose a sentence of life imprisonment without the possibility of parole on a homicide offender, as it did with respect to nonhomicide offenders in Graham, Miller held that before a sentencer may impose a sentence of life imprisonment without the possibility of parole on a juvenile homicide offender, the sentencer must first "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id. at 2469.

Although the Supreme Court made clear that it was not addressing the defendants' argument "that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger," the Supreme

Court cautioned that "given all [it has] said in <u>Roper</u> [<u>v. Simmons</u>, 543 U.S. 551 (2005)], <u>Graham</u>, and [<u>Miller</u>] about children's diminished culpability and heightened capacity for change, . . . appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." <u>Id.</u> The Supreme Court emphasized that this is "especially so because of the great difficulty [the Supreme Court] noted in <u>Roper</u> and <u>Graham</u> of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.' " <u>Id.</u> (quoting <u>Roper</u>, 543 U.S. at 573).

Because the statutory sentencing scheme in effect in Florida from May 1994 until July 2014 mandated a sentence of life imprisonment without the possibility of parole for a capital homicide offense committed by a juvenile, there is no dispute that, under <u>Miller</u>, the statute is unconstitutional as applied to juvenile offenders. The district courts of appeal are split, however, on the issue of whether <u>Miller</u> should apply retroactively to provide relief to those juvenile offenders whose sentences would be unconstitutional under <u>Miller</u> but whose convictions and sentences were already final when <u>Miller</u> was decided. <u>Compare</u> <u>Geter</u>, 115 So. 3d at 385, <u>with</u> <u>Toye</u>, 133 So. 3d at 541.

## II. Retroactivity of <u>Miller</u>

When the United States Supreme Court or this Court renders a decision favorable to criminal defendants, this Court has held that "such decisions apply in all cases to convictions that are not yet final—that is convictions for which an appellate court mandate has not yet issued." Hughes v. State, 901 So. 2d 837, 839 (Fla. 2005) (citing Smith v. State, 598 So. 2d 1063, 1066 (Fla. 1992)). However, once a conviction is final, the State acquires an interest in the finality of the conviction. As this Court has previously stated:

> The importance of finality in any justice system, including the criminal justice system, cannot be understated. It has long been recognized that, for several reasons, litigation must, at some point, come to an end. In terms of the availability of judicial resources, cases must eventually become final simply to allow effective appellate review of other cases. There is no evidence that subsequent collateral review is generally better than contemporaneous appellate review for ensuring that a conviction or sentence is just. Moreover, an absence of finality casts a cloud of tentativeness over the criminal justice system, benefitting neither the person convicted nor society as a whole.

Witt, 387 So. 2d at 925. Nonetheless, this Court has also recognized that the doctrine of finality can be abridged when

> a more compelling objective appears, such as ensuring fairness and uniformity in individual adjudications. Thus, society recognizes that a sweeping change of law can so drastically alter the substantive or procedural underpinnings of a final conviction and sentence that the machinery of post-conviction relief is necessary to avoid individual instances of obvious injustice. Considerations of fairness and uniformity make it very difficult to justify depriving a person of his liberty or his life, under process no longer considered acceptable and no longer applied to indistinguishable cases.

Id. (internal quotation marks omitted).

In determining whether a change in the law should apply retroactively, this Court must balance these two competing interests—the need for decisional finality with the concern for fairness and uniformity. This determination is governed by this Court's decision in Witt, 387 So. 2d at 931, which held that a change in the law does not apply retroactively in Florida "unless the change: (a) emanates from this Court or the United States Supreme Court, (b) is constitutional in nature, and (c) constitutes a development of fundamental significance."

In this case, it is clear, and the parties agree, that the first two prongs are met. Miller is obviously a decision emanating from the United States Supreme Court, and its holding that the Eighth Amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" is clearly constitutional in nature. Miller, 132 S. Ct. at 2469. Accordingly, the determinative question in this case is whether Miller "constitutes a development of fundamental significance." Witt, 387 So. 2d at 931.

In Witt, this Court stated that "[a]lthough specific determinations regarding the significance of various legal developments must be made on a case-by-case basis, history shows that most major constitutional changes are likely to fall within two broad categories." Id. at 929. The first are those changes of law "which place beyond the authority of the state the power to regulate certain conduct or impose

- 13 -

certain penalties" and the second are "those changes of law which are of sufficient magnitude to necessitate retroactive application as ascertained by the three-fold test of [the United States Supreme Court's decisions in] Stovall [v. Denno, 388 U.S. 293 (1967)] and Linkletter [v. Walker, 381 U.S. 618 (1965)]." Id.  The three-fold analysis under Stovall and Linkletter includes an analysis of "(a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of justice of a retroactive application of the new rule." Witt, 387 So. 2d at 926.

Falcon asserts that the Supreme Court's decision in Miller falls within the first category.  Specifically, Falcon contends that the Supreme Court's decision announces a new substantive bar to mandatory life sentences without the possibility of parole for all juveniles and proclaims that the Eighth Amendment forbids such mandatory sentencing schemes.  Conversely, the State argues that Miller does not preclude states from imposing life sentences without the possibility of parole, but instead simply alters the procedures that must be followed before such a sentence may be imposed.

We reject the State's argument.  As articulated by the Second District in Toye, Miller "effectively invalidated section 775.082(1), Florida Statutes (2012), as applied to juveniles convicted of a capital felony . . . .  Hence, Miller invalidated the only statutory means for imposing a sentence of life without the possibility of

parole on juveniles convicted of a capital felony." <u>Toye</u>, 133 So. 3d at 543. In other words, "<u>Miller</u> has dramatically disturbed the power of the State of Florida to impose a nondiscretionary sentence of life without parole on a juvenile convicted of a capital felony, and thus the decision falls within this first category of developments of fundamental significance" that place beyond the authority of the state the power to regulate certain conduct or impose certain penalties. <u>Id.</u>

Judge Van Nortwick, specially concurring in <u>Smith v. State</u>, reached a similar conclusion:

> Under <u>Miller</u>, a defendant cannot be given a <u>mandatory</u> sentence of life without parole if the defendant was a juvenile when the offense was committed. That is, <u>Miller</u> categorically bans mandatory life sentences for juveniles. Thus, <u>Miller</u> "[p]laces beyond the authority of the state [of Florida] the power to . . . impose [a] certain penalt[y]"—mandatory life sentences for juveniles.

113 So. 3d 1058, 1062 (Fla. 1st DCA 2013) (Van Nortwick, J., specially concurring).

Clearly, by invalidating section 775.082(1), Florida Statutes, as applied to juveniles convicted of a capital homicide offense, <u>Miller</u> announced a prohibition on the state's power to "impose certain penalties"—nondiscretionary sentences of life imprisonment without the possibility of parole. Indeed, prior to the Supreme Court's decision in <u>Miller</u>, trial courts in Florida were required, under the statutory sentencing scheme then in effect, to sentence a juvenile offender convicted of a

capital homicide offense to life imprisonment without the possibility of parole. This statute, all parties agree, is no longer constitutional after Miller.

The fact that Miller did not categorically foreclose a trial court's ability to impose a sentence of life imprisonment without the possibility of parole in "uncommon" circumstances, after individualized consideration, is not dispositive in determining whether Miller fits within the first category of major constitutional changes that "place beyond the authority of the state the power to regulate certain conduct or impose certain penalties." Witt, 387 So. 2d at 929. The state is no longer able to impose a mandatory sentence of life imprisonment without the possibility of parole on a juvenile—the only statutory penalty that was provided for a capital homicide offense for over twenty years under Florida law until Miller ruled that sentence unconstitutional. Under these circumstances, this alone is sufficient reason to conclude that Miller should be applied retroactively.

As this Court stated in Witt, "[c]onsiderations of fairness and uniformity make it very 'difficult to justify depriving a person of his liberty or his life, under process no longer considered acceptable and no longer applied to indistinguishable cases.' " Id. at 925 (quoting ABA Standards Relating to Postconviction Remedies 37 (Approved Draft 1968)). Here, if Miller is not applied retroactively, it is beyond dispute that some juvenile offenders will spend their entire lives in prison while others with "indistinguishable cases" will serve lesser sentences merely

because their convictions and sentences were not final when the Miller decision was issued. The patent unfairness of depriving indistinguishable juvenile offenders of their liberty for the rest of their lives, based solely on when their cases were decided, weighs heavily in favor of applying the Supreme Court's decision in Miller retroactively.

For all these reasons, we conclude that the Supreme Court's decision in Miller constitutes a "development of fundamental significance" under Witt and therefore applies retroactively. We would reach the same conclusion that Miller is retroactive if we were to apply the federal test established in Teague, 489 U.S. at 307. Pursuant to Florida Rule of Criminal Procedure 3.850(b)(2), any affected juvenile offender shall have two years from the time the mandate issues in this case to file a motion for postconviction relief in the trial court seeking to correct his or her sentence based on Miller.

Because we have concluded that Miller constitutes a change of law "which place[s] beyond the authority of the state the power to regulate certain conduct or impose certain penalties," Witt, 387 So. 2d at 929, we need not determine whether the rule articulated in Miller satisfies the three-fold analysis under Stovall and Linkletter. We do observe, however, that our holding of retroactivity is consistent with the Supreme Court's own treatment of Arkansas defendant Kuntrell Jackson in the Miller decision itself. As Chief Judge Benton observed in his concurrence

- 17 -

below, Jackson's direct appeal of his conviction and sentence was already final when he sought collateral relief through a postconviction habeas petition that the Supreme Court ultimately consolidated with the Miller case. See Falcon, 111 So. 3d at 974-75 (Benton, C.J., concurring). In reversing the Arkansas state court's denial of relief and remanding Jackson's case for resentencing, the Supreme Court strongly suggested that the rule articulated in Miller should apply retroactively to cases on collateral review.

Having concluded that juvenile offenders whose convictions and sentences were final prior to the Supreme Court's decision in Miller may seek collateral relief based on that decision, we now turn to the appropriate remedy for trial courts to employ when addressing these cases on collateral review.

### III. The Appropriate Remedy

In Horsley v. State, No. SC13-1938, slip op. at 3 (Fla. Mar. 19, 2015), we have concluded that legislation enacted by the Florida Legislature in 2014 to bring Florida's juvenile sentencing statutes into compliance with Miller and Graham provides the appropriate remedy for all juvenile offenders whose sentences are unconstitutional under Miller, even if the juvenile's offense was committed prior to the July 1, 2014, effective date of the legislation. In this case, the State has conceded that, if Miller applies retroactively, there are "no principled distinctions" as to the appropriate remedy for cases on collateral review and those pending on

direct appeal, as in the posture of <u>Horsley</u>. Thus, based on the reasoning fully set forth in <u>Horsley</u>, we conclude that trial courts should apply chapter 2014-220, Laws of Florida, and conduct a resentencing proceeding in conformance with that legislation, when presented with a timely rule 3.850 motion for postconviction relief from any juvenile offender whose sentence is unconstitutional under <u>Miller</u>.

Here, the trial court should hold an individualized sentencing hearing for Falcon pursuant to section two of chapter 2014-220, Laws of Florida, in which the trial court shall consider the enumerated and any other pertinent factors "relevant to the offense and [Falcon's] youth and attendant circumstances." Ch. 2014-220, § 2, Laws of Fla.[3] Under section 1 of chapter 2014-220, Laws of Florida, the trial court must determine whether Falcon "actually killed, intended to kill, or attempted to kill the victim." Ch. 2014-220, § 1, Laws of Fla.[4] If the trial court determines

---

3. Although the particular facts of Falcon's crime are not directly relevant to the legal issues we address at this time, record evidence suggests that she is exactly the type of juvenile offender the United States Supreme Court was referring to in <u>Miller</u> and its other recent juvenile sentencing cases regarding the "characteristics of youth, and the way they weaken rationales for punishment"—a juvenile with a troubled upbringing, whose offense was influenced by "familial and peer pressures," and who has shown great capacity for remorse and rehabilitation. <u>Miller</u>, 132 S. Ct. at 2465-66, 2468.

4. The record currently before us does not conclusively establish this fact. Although there appears to be some indication that Falcon has admitted to firing the gun, the jury did not find Falcon to have had actual possession of a firearm during the attempted armed robbery. We leave this determination for the trial court on remand.

that Falcon "actually killed, intended to kill, or attempted to kill the victim," then Falcon must receive a sentence of at least forty years' imprisonment, with subsequent judicial review of her sentence after having served twenty-five years of that sentence. If the trial court concludes that Falcon did not "actually kill, intend to kill, or attempt to kill the victim," the trial court has broader discretion to impose a sentence of any lesser term of years, with judicial review after fifteen years if Falcon is sentenced to more than fifteen years' imprisonment.[5]

## CONCLUSION

For all these reasons, we hold that the United States Supreme Court's decision in <u>Miller</u> applies retroactively to any juvenile offender seeking to challenge the constitutionality of his or her sentence pursuant to <u>Miller</u> through collateral review. Under Florida Rule of Criminal Procedure 3.850(b)(2), any affected juvenile offender shall have two years from the time the mandate issues in this case to file a motion for postconviction relief in the trial court seeking to correct his or her sentence pursuant to <u>Miller</u>.

We further conclude that a trial court presented with a timely motion under rule 3.850 from any juvenile offender whose sentence is unconstitutional under

---

5. Because Falcon has already served more than fifteen years of a sentence for her first-degree murder conviction, it is possible, depending on the sentence she ultimately receives on remand, that she will be immediately eligible for a sentence review after being resentenced. However, we leave it to the trial court to resolve any specific issues relating to application of the new legislation in this case.

Miller shall apply the juvenile sentencing legislation enacted by the Florida Legislature in 2014 and conduct a resentencing proceeding consistent with the provisions of chapter 2014-220, Laws of Florida, and our decision in Horsley. Accordingly, we answer the First District's certified question regarding retroactivity in the affirmative, quash the underlying decision, and remand this case for resentencing in conformance with chapter 2014-220, Laws of Florida.

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D13-34

(Bay County)

Elliot H. Scherker of Greenberg Traurig, P.A., Miami, Florida; Paolo Giuseppe Annino, Co-Director, Public Interest Law Center, Florida State College of Law, Tallahassee, Florida; and Karen Marcia Gottlieb, Coconut Grove, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, and Trisha Meggs Pate, Bureau Chief, Tallahassee, Florida,

for Respondent

Marsha L. Levick, Juvenile Law Center, Philadelphia, Pennsylvania, and George E. Schulz, Jr. of Holland & Knight, Jacksonville, Florida,

for Amici Curiae Juvenile Law Center, et al.