NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ROBERT HOWARD,                          )
                                        )
            Appellant,                  )
                                        )
v.                                      )      Case No. 2D14-4411
                                        )
STATE OF FLORIDA,                       )
                                        )
            Appellee.                   )
_____)

Opinion filed December 9, 2015.

Appeal pursuant to Fla. R. App. P.
9.141(b)(2) from the Circuit Court for
Polk County; Reinaldo Ojeda, Judge.

Robert Howard, pro se.

Howard L. Dimmig, II, Public Defender,
and Maureen E. Surber, Assistant Public
Defender, Bartow, for Appellee.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Cerese Crawford Taylor,
Assistant Attorney General, Tampa,
for Appellee.


PER CURIAM.

        Affirmed.  See Atwell v. State, 128 So. 3d 167 (Fla. 4th DCA 2013), rev.

granted, 160 So. 3d 892 (Fla. 2014).

CASANUEVA and SLEET, JJ., Concur.
ALTENBERND, J., Concurs with opinion.

ALTENBERND, Judge, Concurring.

I agree that Mr. Howard's appeal of the trial court's order denying his motion pursuant to Florida Rule of Criminal Procedure 3.800(a) may be controlled by the decision in Atwell v. State, 128 So. 3d 167, 168 (Fla. 4th DCA 2013), rev. granted, 160 So. 3d 892 (Fla. 2014). However, Mr. Howard's story is extraordinary and is worth telling. He is serving parole-eligible life sentences for a murder and a burglary that he committed on August 4, 1981, when he was seventeen. We conclude that his sentences are not illegal. However, in light of the recent statutory amendments in Chapter 2014-200, Laws of Florida, which the supreme court has applied retroactively to juveniles serving life sentences without the possibility of parole for more recent offenses, he may be entitled to a new parole hearing at which criteria comparable to the new laws are applied to his case. Under the new criteria, he may have a much better chance to achieve parole. But these are not issues we can resolve in this appeal.

## I.  MR. HOWARD'S STORY

Mr. Howard was born on December 10, 1963. A few months before his eighteenth birthday, between August 4 and August 6, 1981, he committed five serious crimes. On August 4, along with another man, he committed an unarmed robbery, a burglary with an assault, and a first-degree murder of a sixty-nine-year-old woman. A day later, he committed an unarmed robbery. On August 6, he committed a burglary of a dwelling or occupied conveyance. The circumstances of these offenses are unknown

to this court, but there is no denying that such a collection of offenses, even at such a young age, is a very bad start for his story.

In 1982, Mr. Howard was sentenced for all of these offenses. For the murder and the burglary with an assault, he received life in prison with the possibility of parole after twenty-five years. For the other offenses, he received fifteen-year sentences of incarceration that have now been fully served.

Mr. Howard was sent to prison thirty-three years ago. He will turn fifty-two years of age this year. He became parole eligible in about 2007. According to his motion, he has been denied parole on three occasions. He has a presumptive parole release date in 2054, when he will be ninety-one if he somehow survives to that age. To this point, these facts are harsh, but they are not necessarily unusual or even noteworthy. After all, Mr. Howard committed some terrible crimes. But the story has a twist.

In his file, and attached to his motion, is a memorandum from his classification officer at the Florida Department of Corrections, dated March 10, 2010. In the twenty-five years prior to that memorandum, Mr. Howard never had a disciplinary report as a prisoner. For those unfamiliar with prison discipline, that is an extraordinary feat. I confess that I probably could not achieve that record if imprisoned for twenty-five years.

Mr. Howard has earned his GED. He worked for Pride Industries, earning certificates as a forklift operator, a forklift trainer, and a shipping and receiving controller. Prior to 2005, Mr. Howard earned nineteen other certificates—at least eleven

of which would qualify him for jobs on the outside. Between 2005 and 2010, he earned certificates in five more categories.

In the memorandum, the classification officer states: "During my years as a classification officer, I have not seen many individuals as dedicated to rehabilitation as inmate Howard. He always carries himself in a positive manner, respects both officer and inmate alike, and he continuously betters himself by learning new trades and participating in self-betterment programs." The classification officer concludes: "I believe he is rehabilitated and would be a very good candidate for parole."

## II. THE EVOLVING LAW APPLICABLE TO MR. HOWARD

The law concerning adult sentencing of juveniles is currently undergoing substantial change. In 2012, the United States Supreme Court held that it is unconstitutional for a state to mandate, as a sentence applicable to all juvenile offenders, a sentence of life without the possibility of parole; such a sentence can only be imposed with individualized consideration. Miller v. Alabama, 132 S. Ct. 2455, 2469 (2012). Because the Florida legislature eliminated parole-eligible life sentences for murder in the mid-1990s, when Miller became the law, Florida needed to revise its laws for future cases. The revisions were made during the 2014 legislative session. Ch. 14-220, § 3 at 2873, Laws of Fla. The bulk of those revisions are now codified as sections 921.1401 and 921.1402, Florida Statutes (2014). The revisions create a system under which a juvenile's sentence is given individualized consideration at the time of sentencing and later may be reviewed by the trial court rather than by an administrative board. During that review, which occurs after twenty-five years in some cases of murder, the trial court is to consider the following factors:

- 4 -

(a) Whether the juvenile offender demonstrates maturity and rehabilitation.

(b) Whether the juvenile offender remains at the same level of risk to society as he or she did at the time of the initial sentencing.

(c) The opinion of the victim or the victim's next of kin. The absence of the victim or the victim's next of kin from the sentence review hearing may not be a factor in the determination of the court under this section. The court shall permit the victim or victim's next of kin to be heard, in person, in writing, or by electronic means. If the victim or the victim's next of kin chooses not to participate in the hearing, the court may consider previous statements made by the victim or the victim's next of kin during the trial, initial sentencing phase, or subsequent sentencing review hearings.

(d) Whether the juvenile offender was a relatively minor participant in the criminal offense or acted under extreme duress or the domination of another person.

(e) Whether the juvenile offender has shown sincere and sustained remorse for the criminal offense.

(f) Whether the juvenile offender's age, maturity, and psychological development at the time of the offense affected his or her behavior.

(g) Whether the juvenile offender has successfully obtained a high school equivalency diploma or completed another educational, technical, work, vocational, or self-rehabilitation program, if such a program is available.

(h) Whether the juvenile offender was a victim of sexual, physical, or emotional abuse before he or she committed the offense.

(i) The results of any mental health assessment, risk assessment, or evaluation of the juvenile offender as to rehabilitation.

§ 921.1402(6), Fla. Stat. (2015).

After Miller was decided, it was unclear whether that decision would apply retroactively to juveniles who had received sentences of life without the possibility of parole in the past. The Supreme Court of Florida recently decided that it does. Falcon v. State, 162 So. 3d 954, 956 (Fla. 2015). The court also recently decided that juvenile offenders whose sentences are unconstitutional under Miller should be resentenced. Horsley v. State, 160 So. 3d 393, 395 (Fla. 2015). In so holding, the court needed to devise a method to implement the holding in Miller to these earlier cases. The method it selected was to adopt the provisions of Chapter 2014-220 for use with the earlier defendants. Id. at 405-06.

But Mr. Howard has been sentenced to life with parole, which is not illegal under Miller. Thus, Horsley does not have direct application to him. But the argument that he presents in his motion and on appeal may still be correct either as a matter of law or good public policy.

Mr. Howard reasons that the criteria that have been used to deny him parole—and to deny parole to other prisoners similarly situated—are harsher than the criteria that will now be used for the release of prisoners with the benefit of Horsley. Essentially, he believes that he is being denied equal protection of the law because more favorable rules for release are applied to prisoners sentenced more recently than he was. Mr. Howard maintains that if persons who committed serious crimes as juveniles should be given the benefit of more favorable rules for release that emphasize their youthfulness at the time of the offense and their efforts at rehabilitation while in prison, then those rules should apply to all such prisoners and not merely to those who

happened to be sentenced to life after parole was abolished in this state. The logic of his argument is entirely reasonable.

But a claim of illegal sentence is not the method to make this challenge. There may be more than one way for him to make this challenge. Section 947.165, Florida Statutes (2014), requires the Florida Commission on Offender Review to develop and implement objective parole guidelines as the criteria on which parole decisions are made. Our record does not reflect whether the guidelines applicable at the time of Mr. Howard's last hearing included criteria comparable to those now used by circuit courts under section 921.1402.[1] If the objective parole guidelines were deficient in this manner, then Mr. Howard ought to be able to make a request for a new hearing, perhaps as an extraordinary review,[2] before the Florida Commission on Offender Review, asking the commission for a rehearing using comparable standards. If that request is rejected, an action in the circuit court of Leon County seeking a declaratory judgment to determine whether Mr. Howard is entitled to the benefit of the new criteria might be appropriate. Although Mr. Howard may stand out for his exceptional record in prison, he is likely to be one of a number of prisoners who have been denied parole while serving sentences of life with the possibility of parole under guidelines that did not

---

[1]It should be noted that the twenty-five-year review under section 921.1402 is not available for certain prisoners who had already committed serious offenses before they committed murder. See 921.1402(2)(a), Fla. Stat. (2015). Nothing in our record indicates that this is a circumstance that would prevent Mr. Howard from obtaining a review. Even his subsequent offenses in August 1981 were less serious offenses that would not appear to disqualify him from consideration if his offenses had been committed more recently.

[2]See Fla. Admin. Code R. 23-21.0161 (explaining the procedure for extraordinary interviews to determine parole release).

take into consideration their youthfulness at the time of the offense.  Thus, the

resolution of this issue may affect a larger group of prisoners.