CASANUEVA, Judge.
Nicholas L. Lindsey, Jr., appeals his judgment and corrected sentence for first-degree murder following the shooting death of St. Petersburg Police Officer David Crawford. Mr. Lindsey asserts that the trial court erred in four respects: by improperly admitting his confession, as it was obtained by improper coercion; by failing to exclude his confession and other evidence obtained after his arrest, as his arrest was without probable cause; by denying his motion for mistrial based on an improper comment made during the State’s closing argument; and by imposing an illegal sentence that constitutes cruel and unusual punishment.
Having reviewed the record on appeal, including the video of Mr. Lindsey’s confession, we affirm the first three issues without further comment. As to the sentence, we affirm for the reasons discussed below.
I. FACTS AND PROCEDURAL HISTORY
On March 7, 2011, Mr. Lindsey was charged with one count of first-degree murder. The indictment states that on February 21, 2011, Mr. Lindsey shot Officer Crawford with a firearm, resulting in Officer Crawford’s death. This occurred while Officer Crawford was engaged in the performance of his legal duties as a law enforcement officer. Mr. Lindsey, who turned sixteen years old eight days prior to the shooting, was prosecuted as an adult.
Following a jury trial, Mr. Lindsey was convicted as charged and sentenced to life imprisonment without the possibility of parole. This sentence was mandated by section 775.082(1), Florida Statutes (2010), applicable to capital felonies, and section 775.0823(1), applicable to the murder of a law enforcement officer, and was permissible under section 775.087(2), applicable to murder involving the discharge of a firearm. Mr. Lindsey appealed his judgment and sentence and, during the pendency of this appeal, filed a motion to correct sentencing error based on the Supreme Court’s holding in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).[1]
The trial court granted Mr. Lindsey’s motion to correct sentencing error and conducted a sentencing hearing at which both sides presented evidence. After conducting an individualized analysis considering the Miller factors,[2] the trial court issued a twenty-seven page resentencing *269 order and found that Mr. Lindsey had not “demonstrated any diminished culpability or increased possibility of rehabilitation that would warrant a sentence less than the maximum permissible term of life imprisonment without the possibility of parole” and further found that life in prison without the possibility of parole is a proportionate sentence in this case. The court found that Mr. Lindsey qualified for sentencing under sections 775.082(1), 775.0823(1), and 775.087(2), and sentenced Mr. Lindsey to life imprisonment without the possibility of parole under sections 775.082(1) and 775.0823(1) and to a minimum term of life under section 775.087(2).
II. ANALYSIS
A. Sentencing under Sections 775.082(1) and 775.0823(1)
In Miller, the Supreme Court held “that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.” 132 S.Ct. at 2469. In light of a child’s diminished culpability and capacity for change, the Supreme Court noted that juveniles “ ‘are less deserving of the most severe punishments,’ ” id. at 2464 (quoting Graham v. Florida, 560 U.S. 48, 68, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010)), and the occasion for imposing the harsh sentence of life in prison without parole “will be uncommon,” id. at 2469. This conclusion is based, at least in part, on “ ‘the evolving standards of decency that mark the progress of a maturing society.’ ” Id. at 2463 (internal quotation marks omitted (quoting Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))). Thus, although the Supreme Court did not absolutely prohibit sentencing a juvenile to life in prison without the possibility of parole in homicide cases, Miller requires that the sentencer “take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Id. at 2469.
In this case, Mr. Lindsey was originally sentenced pursuant to sections 775.082(1) and 775.0823(1), both of which effectively mandated life in prison without parole for a juvenile, with a minimum imprisonment term of life imposed pursuant to section 775.087(2). In an effort to comply with the subsequently-issued Miller opinion, the trial court conducted an individualized sentencing hearing prior to reimposing the same sentence. Mr. Lindsey argues that the trial court failed to properly consider and apply the Miller factors when conducting the sentencing hearing.
Mr. Lindsey argued below that a term-of-years sentence, not life, was appropriate because he was immature, impetuous, and unable to appreciate risks and consequences at the time the offense occurred. In support of this argument, Mr. Lindsey referenced, among other things, scientific studies that were cited in the amicus briefs filed in Miller. See Miller, 132 S.Ct. at 2464 n. 5. In considering this argument, the trial court stated in its order:
The court has thoroughly reviewed the information presented in relation to this factor. As to the scientific studies addressed in the amicus briefs, the court notes that there is no indication any testing of this sort was performed on the Defendant....
Assessing the relevant circumstances surrounding the offense provides the best way to determine whether there was any youthful immaturity or impetuosity in the Defendant. A review of these circumstances ... shows that this *270 crime and the events leading up to it display thought, experience, and planning; the Defendant madé his own decisions. Accordingly, the court is not convinced that any immature behavior or impulsivity that may have generally been present in the Defendant as a 16-year-old accounted for his actions or lessened his culpability.
Although we do not disagree with the trial court’s conclusion as an evidentiary matter, it appears that the trial court misunderstood Miller as requiring Mr. Lindsey to affirmatively establish his youthful immaturity or impetuosity. Similarly, it appears that the trial court failed to properly apply Miller when it found “that any current contention that the defendant is capable of being rehabilitated is hypothetical” because the defense argued at the hearing that Mr. Lindsey’s “maturity and development may not be fully gauged until his mid-20s, when scientific studies suggest a person’s brain is fully developed.”
As set forth in Miller, prior Supreme Court precedent has “establishfed] that children are constitutionally different from adults for purposes of sentencing” and “have diminished culpability and greater prospects for reform.” 132 S.Ct. at 2464 (citing Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and Graham, 560 U.S. 48, 130 S.Ct. 2011). Elaborating on these constitutional differences, the Court explained:
[C]hildren have a “ ‘lack of maturity and an underdeveloped sense of responsibility,’ ” leading to recklessness, impulsivity, and heedless risk-taking. Second, children “are more vulnerable ... to negative influences and outside pressures,” including from their family and peers; they have limited “contro[l] over their own environment” and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child’s character is not as “well formed” as an adult’s; his traits are “less fixed” and his actions less likely to be “evidence of irretrievable] depravity].”
Id. at 2464 (alterations in original) (internal citations omitted).
Because of the Court’s findings, these “distinctive attributes of youth” are already determined to exist, “diminishing] the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes.” Id. at 2465. Accordingly, to the extent the trial court failed to acknowledge the differences between Mr. Lindsey and an adult offender, the trial court erred in its resentencing analysis under sections 775.082(1) and 775.0823(1). Were these the only bases for Mr. Lindsey’s sentence, we would reverse and remand for an individualized sentencing hearing pursuant to chapter 2014-220, Laws of Florida. See Horsley v. State, 160 So.3d 393, 394-95 (Fla.2015) (holding that resentencing pursuant to chapter 2014-220 is the proper remedy for a sentence that violates Miller ). However, Mr. Lindsey was also sentenced to life without parole pursuant to section 775.087(2).
B. Sentencing Under Section 775.087(2)
Section 775.087(2)(a)(3) provides for a “minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison” for a defendant who is convicted of murder and, during the commission of the murder, discharged a firearm causing death. In this case, Mr. Lindsey was sentenced to a minimum term of life without parole pursuant to section 775.087(2)(a)(3). See § 775.087(2)(a) (discussing gain-time ineligibility and requirement to serve minimum sentence). Because this was a nonmanda- *271 tory life sentence imposed pursuant to a statute that provided the trial court with discretion to impose a life sentence rather than mandating such a sentence, this court’s precedent provides that Miller is not applicable. See Starks v. State, 128 So.3d 91, 92 (Fla.2d DCA 2013) (“[Because the statute under which Starks was sentenced did not mandate a life sentence but provided the trial court with a choice of a life sentence or a sentence of a term of years, Starks was not sentenced under a sentencing scheme condemned in Miller”), disapproved of on other grounds by Lawton v. State, — So.3d -, 2015 WL 1565725, 40 Fla. L. Weekly S195 (Fla. Apr. 9, 2015); see also Mazer v. State, 152 So.3d 20, 21 (Fla. 2d DCA 2014); Mason v. State, 134 So.3d 499, 500 (Fla. 4th DCA 2014). Accordingly, we must conclude that Mr. Lindsey’s sentence pursuant to section 775.087(2) does not violate Miller, and we are constrained to affirm.
C. Change in Jurisprudence
Subsequent to this court’s opinion in Starks, the Florida Legislature unanimously enacted chapter 2014-220, Laws of Florida, to address the Miller concerns and “bring Florida’s juvenile sentencing statutes into compliance with the United States Supreme Court’s recent Eighth Amendment juvenile sentencing jurisprudence.” Horsley, 160 So.3d at 394.[3] In Horsley, the Florida Supreme Court concluded:
To give effect to the commandment of the United States Supreme Court in Miller and the unanimous pronouncement of the Florida Legislature as to how to comply with the Miller decision, ... the proper remedy is to apply chapter 2014-220, Laws of Florida, to all juvenile offenders whose sentences are unconstitutional under Miller.
Id. at 395.
Because our precedent requires us to conclude that Mr. Lindsey’s sentence is not unconstitutional under Miller, we must also conclude that Horsley does not provide an available remedy for Mr. Lindsey. In light of the change in jurisprudence reflected in Horsley, we question whether the Eighth Amendment concerns expressed in Miller apply to all life without parole sentences imposed upon juveniles, requiring application of the remedy espoused in Horsley regardless of whether the life sentence was imposed pursuant to a mandatory or discretionary sentencing statute.[4] Our precedent requires us to answer this question in the negative.
III. CONCLUSION
Accordingly, we affirm the minimum term of life without parole and we certify the following question to the Florida Supreme Court as one of great public importance:
*272 DO MILLER V. ALABAMA, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), AND HORSLEY V. STATE, 160 So.3d 393 (Fla.2015), REQUIRE THE APPLICATION OF CHAPTER 2014-220, LAWS OF FLORIDA, TO JUVENILES SENTENCED TO A NON-MANDATORY SENTENCE OF LIFE IN PRISON WITHOUT PAROLE BEFORE THE EFFECTIVE DATE OF CHAPTER 2014-220, LAWS OF FLORIDA?
Affirmed; question certified.
NORTHCUTT, J., Concurs.
BLACK, J., Concurs with opinion.

. Miller issued three months after Mr. Lindsey's sentence was imposed and holds "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.” 132 S.Ct. at 2469.

. See Miller, 132 S.Ct. at 2464-65, 2468 (discussing significant differences between juveniles and adults, which make children "constitutionally different” from adults for sentencing purposes). The trial court issued an extensive and thoughtful order attempting to address the Miller holding at a time when there was little case law or other guidance available. The specific factors considered in the trial court's order are the defendant’s family and home environment, the defendant’s chronological age and its hallmark characteristics, the defendant’s potential for rehabilitation, whether the defendant might have been charged or convicted of a lesser offense if not for the incompeten- *269 cies of youth, and the circumstances of the particular offense.

. Among other things, chapter 2014-220, Laws of Florida, requires an individualized sentencing hearing pursuant to section 921.1401, Florida Statutes (2014), even when the trial court is considering a life sentence that is not mandated but is available pursuant to a sentencing reclassification. § 775.082, Fla. Stat. (2014).

. The Court noted in Miller that “none of what it said about children — about their distinctive (and transitory) mental traits and environmental vulnerabilities — is crime-specific.” 132 S.Ct. at 2465 (discussing Graham, 560 U.S. 48, 130 S.Ct. 2011). Just as the attributes of youth do not differ depending on the crime, neither do they differ depending on whether the sentencing scheme is mandatory or discretionary. Thus, we are hard-pressed to conclude that the Eighth Amendment concerns addressed in Miller would apply only to a life without parole sentence imposed pursuant to a mandatory sentencing scheme and not to all life without parole sentences imposed upon juveniles.