# Supreme Court of Florida

_____

No. SC15-1071
_____

**LAISHA L. LANDRUM**,
Petitioner,

vs.

**STATE OF FLORIDA**,
Respondent.

[June 9, 2016]

PARIENTE, J.

Laisha L. Landrum was sentenced to life in prison without the possibility of parole for a second-degree murder she committed when she was sixteen years old. Landrum v. State, 163 So. 3d 1261 (Fla. 2d DCA 2015). The Second District Court of Appeal affirmed the sentence but expressed concerns about the constitutionality of Landrum's sentence and certified a question of great public importance,[1] which we rephrase as follows:

_____

1. The following question was certified by the Second District:

BECAUSE THERE IS NO PAROLE FROM A LIFE SENTENCE IN FLORIDA, DOES MILLER V. ALABAMA, 132 S. CT. 2455 (2012), REQUIRE THE APPLICATION OF THE PROCEDURES

DOES A NON-MANDATORY LIFE SENTENCE WITHOUT PAROLE IMPOSED FOR SECOND-DEGREE MURDER VIOLATE THE EIGHTH AMENDMENT PURSUANT TO MILLER V. ALABAMA, 132 S. CT. 2455 (2012), AS A RESULT OF A SENTENCING SCHEME THAT DID NOT REQUIRE THE TRIAL COURT TO TAKE INTO ACCOUNT THE INDIVIDUALIZED SENTENCING CONSIDERATIONS OF A JUVENILE OFFENDER'S YOUTH?

We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

We answer the rephrased certified question in the affirmative, and hold that the Supreme Court's decision in Miller applies to juvenile offenders whose sentences of life imprisonment without parole were imposed pursuant to a discretionary sentencing scheme when the sentencing court, in exercising that discretion, was not required to, and did not take "into account how children are different and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Miller, 132 S. Ct. at 2469.

Even in a discretionary sentencing scheme, the sentencing court's exercise of discretion before imposing a life sentence must be informed by consideration of the juvenile offender's "youth and its attendant circumstances" as articulated in

---

OUTLINED IN SECTIONS 775.082, 921.1401, AND 921.1402 FLORIDA STATUTES (2014), TO JUVENILES CONVICTED OF SECOND-DEGREE MURDER AND SENTENCED TO A NON-MANDATORY SENTENCE OF LIFE IN PRISON BEFORE THE EFFECTIVE DATE OF CHAPTER 2014-220, LAWS OF FLORIDA?

Landrum, 163 So. 3d at 1263-64.

Miller and now codified in section 921.1401, Florida Statutes (2014). See Horsley v. State, 160 So. 3d 393, 399 (Fla. 2015). The sentencing court's discretion must be guided by two overarching principles set forth in Miller and reaffirmed by Montgomery v. Louisiana, 136 S. Ct. 718 (2016): The requirement that sentencing courts give due weight to evidence that Miller deemed constitutionally significant before determining that the most severe punishment possible for juvenile offenders is appropriate; and that under Miller, sentencing juvenile offenders to life imprisonment must be "rare" and "uncommon." Miller, 132 S. Ct. at 2469.

Because the trial court was not required to, and did not take into account, the Miller factors, Landrum's life sentence without parole is unconstitutional under the Eighth Amendment to the United States Constitution and article I, section 17 of the Florida Constitution because it is "cruel and unusual" as explained by the United States Supreme Court. Our conclusion that Landrum's sentence is unconstitutional is also compelled by the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." Graham v. Florida, 560 U.S. 48, 59 (2010) (internal quotation omitted). Upholding Landrum's sentence would violate this precept, as a juvenile convicted of the lesser offense of second-degree murder would receive a harsher sentence than a juvenile convicted of first-degree murder. Just as we previously determined that Rebecca Lee Falcon, a fifteen year old convicted of first-degree murder, must be resentenced under the new legislative

sentencing scheme, see Falcon v. State, 162 So. 3d 954 (Fla. 2015), Laisha Landrum, a sixteen year old convicted of the lesser offense of second-degree murder, must also be resentenced and given opportunity for judicial review of that sentence at the statutorily mandated period of twenty-five years. See § 921.1402(2)(b), Fla. Stat. (2014).

We therefore quash the Second District's decision and remand this case for resentencing in conformance with sections 775.082, 921.1401, and 921.1402 of the Florida Statutes, and disapprove Lightsey v. State, 182 So. 3d 727 (Fla. 3d DCA 2015), Kendrick v. State, 171 So. 3d 778 (Fla. 2d DCA 2015), Lindsey v. State, 168 So. 3d 267 (Fla. 2d DCA 2015), Lane v. State, 151 So. 3d 20 (Fla. 1st DCA 2014), Mason v. State, 134 So. 3d 499 (Fla. 4th DCA 2014), and Starks v. State, 128 So. 3d 91 (Fla. 2d DCA 2013), to the extent that they are inconsistent with this opinion.

## FACTS AND BACKGROUND

Petitioner Laisha L. Landrum was sixteen years old when, in June 2004, Landrum and her sixteen-year-old boyfriend, Rocky Almestica, Jr., murdered Emily Clemmons.[2] The sparse record before us does not reveal who was the more culpable teenage defendant. Apparently, the motive for the killing was rooted in

---

2. Prior to Landrum's trial, Almestica was separately tried and convicted of second-degree murder and sentenced to life in prison.

jealousy: Clemmons was Almestica's ex-girlfriend and was competing with Landrum for his affection. At the time, Landrum had a daughter whose biological father was co-perpetrator Almestica.

Landrum was convicted of second-degree murder with a weapon in violation of sections 782.04(2) and 775.087(1)(a), Florida Statutes (2004), after the trial court granted a judgment of acquittal on the first-degree murder count. Landrum, 163 So. 3d at 1261-62. The second-degree murder conviction was classified as a life felony because Landrum used a weapon during the crime. § 775.087(1)(a), Fla. Stat. (2004). Because Landrum was convicted of a life felony, she faced punishment for "a term of imprisonment for life or by imprisonment for a term of years not exceeding life imprisonment." § 775.082(3)(a)3., Fla. Stat. (2004). Like all life imprisonment sentences imposed after 1983, a life imprisonment sentence under section 775.082(3)(a)3. is without parole. See § 921.001(10)(b), Fla. Stat. (2004).

Under the sentencing guidelines then in place, for her second-degree murder conviction[3] Landrum faced at least a term-of-years sentence ranging from 22.3 years to life imprisonment without the possibility of parole.[4] A sentencing judge

---

3. Landrum was also convicted of the offense of tampering with physical evidence. See § 918.13, Fla. Stat. (2004).

4. See § 921.0022, Fla. Stat. (2004) (classifying second-degree murder as a "Level 10" offense); § 921.0024, Fla. Stat. (2004) (providing that "Level 10"

could depart downward from the lowest permissible sentence if mitigating circumstances or factors were present, although the judge would have to justify in writing the reasons for the departure.  § 921.00265(1)-(2), Fla. Stat. (2004).  However, under that same statute, the sentencing judge was not required to provide any reasoning for imposing a life sentence.

At sentencing, Landrum's counsel argued for a downward departure from a life sentence based on two statutory mitigators: (1) The victim was the initiator, willing participant, or the aggressor of the incident; and (2) the crime was committed in an unsophisticated manner, was an isolated incident, and Landrum showed remorse.  See § 921.0026(2)(f) and (j), Fla. Stat. (2004).  Additionally, Landrum's counsel made the following argument in opposition to a life sentence:

> Judge, how much good does a 16-year old person, living for a relatively short period of time in this world, how much good does that person have to do to keep from spending the rest of their life, and most probably dying, in a prison cell.  Is it enough that she was a wonderful mother to a five-month-old child who was her life?  Is it enough that she maintained employment on a regular basis until her arrest at 16?  Is it enough that she had virtually no contact with law enforcement?  Is it enough that she was a good daughter to her parents, that she got her

---

offenses that cause the second-degree murder death of one victim result in a minimum sentence computation score of 22.3 years, before the defendant's prior criminal record and any statutory sentencing multipliers were taken into account).  As provided for in section 921.0024(2), the "permissible range for sentencing shall be the lowest permissible sentence up to and including the statutory maximum, as defined in s. 775.082, for the primary offense and any additional offenses before the court for sentencing."

high school education on her own?  I think it is.  I think it is enough.  I think it is enough for the Court to consider her not to be a throw-away.

Unfortunately, regardless of the fact that punitive measures and punishment is certainly the nature of the Court, if we impose the maximum sentence, we have deemed her a throw-away.  I believe that she deserves a light at the end of the tunnel.

After Landrum's counsel spoke, the family of the victim testified as to how the murder impacted them and requested the trial court sentence Landrum to the statutory maximum sentence of life imprisonment without parole.  Various members of Landrum's family also testified during the hearing and requested a lesser sentence than life imprisonment so that Landrum's daughter would have a chance to meet Landrum outside prison walls.  One family member testified that Landrum was still a child when she committed the murder: "She had a baby, but she still was a little girl herself."  Landrum spoke briefly to apologize to the victim's family.

The trial court sentenced Landrum to life in prison without parole, providing no reasons other than stating the following: "Miss Landrum, it's the judgment, order and sentence of the Court that you be adjudicated guilty of the offense of murder in the second degree and confined in state prison for the remainder of your natural life therefore.  Any questions about that?"  The trial court did not indicate what findings of aggravating or mitigating circumstances warranted imposition of the life-without-parole sentence as opposed to a term-of-years sentence, or why the

trial court was not imposing a guidelines sentence of 22.3 years for the second-degree murder conviction.

After the United States Supreme Court decided Miller, Landrum filed a motion in circuit court for postconviction relief in the form of resentencing in compliance with Miller. The circuit court denied the motion, and on appeal the Second District accepted the State's argument that because Landrum was sentenced under a discretionary sentencing scheme, Miller was inapplicable to Landrum's life-without-parole sentence. Nevertheless, the Second District noted that because of the concurrence of our decision in Horsley, which specified the proper remedy for a Miller-deficient sentence, and decisions of the Second District that held Miller inapplicable to life sentences imposed pursuant to a discretionary sentencing scheme, a sentencing anomaly had arisen in the district where "a juvenile convicted of first-degree murder enjoys the right to eventual review of his or her sentence without regard to the date of his or her offense while a juvenile convicted of second-degree murder and sentenced to life before the effective date of the new legislation does not." Landrum, 163 So. 3d at 1263. Accordingly, the Second District certified the question of great public importance to this Court, id. at 1263-64, that we now address as rephrased.

## ANALYSIS

The issue presented by the certified question is whether a life sentence without parole imposed upon a juvenile for second-degree murder is unconstitutional under the Eighth Amendment based on <u>Miller</u> and its progeny, where the trial court had the discretion to impose a term-of-years sentence but was not required to consider, and did not take into account, the individualized attributes of the juvenile offender's youth when exercising this discretion. The issue presented is a pure question of law, which we therefore review de novo. <u>See</u> <u>Gridine v. State</u>, 175 So. 3d 672, 674 (Fla. 2015).

Under article I, section 17, of the Florida Constitution, this Court is required to construe the prohibition against "cruel and unusual punishment" in conformity with decisions of the United States Supreme Court. We thus begin our analysis by reviewing the United States Supreme Court's recent juvenile sentencing decisions, including <u>Miller</u>, which have all emphasized the constitutional difference between adults and juveniles, and how that difference requires distinguishing at sentencing between the juvenile whose crime reflects "transient immaturity," and the rare juvenile whose crime reflects "irreparable corruption." <u>Miller</u>, 132 S. Ct. at 2469. Then, we review the recent decisions of this Court, the sentencing legislation passed by the Legislature in 2014 that gave <u>Miller</u> effect, and contrast the 2014 legislation with the sentencing scheme under which Landrum was sentenced.

Finally, we consider whether Landrum's sentence of life imprisonment without parole is violative of the Eighth Amendment as construed by <u>Miller</u> and in accordance with subsequent juvenile sentencing precedent of this Court and the United States Supreme Court.

## I. The U.S. Supreme Court's Recent Juvenile Sentencing Jurisprudence

In <u>Graham</u>, the Supreme Court held that "the Eighth Amendment forbids the sentence of life without parole" for juvenile offenders convicted of nonhomicide offenses. 560 U.S. at 74. This holding built upon the Supreme Court's previous pronouncement in <u>Roper v. Simmons</u>, 543 U.S. 551, 571 (2005), that juvenile offenders' "diminished culpability" militated against imposing the death penalty because the "penological justification for the death penalty" applies to juvenile offenders "with lesser force than to adults."

Both <u>Roper</u> and <u>Graham</u> emphasized that a juvenile offender's lessened culpability and greater capacity for change require a sentencing court to "consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." <u>Montgomery</u>, 136 S. Ct. at 734 (citing <u>Miller</u>, 132 S. Ct. at 2471). In short, "[a]n offender's age is relevant to the Eighth Amendment," <u>Miller</u>, 132 S. Ct. at 2462, and a sentencer must take the juvenile offender's age into account "before imposing a particular penalty." <u>Id.</u> at 2471.

In Miller, the Supreme Court considered the cases of two juvenile offenders convicted of homicide offenses and sentenced to life in prison without parole pursuant to sentencing schemes in their states that mandated the imposition of a life-without-parole sentence. 132 S. Ct. at 2460. The juvenile offenders argued that these mandatory sentencing schemes violated the Eighth Amendment by running "afoul of Graham's admonition that '[a]n offender's age is relevant to the Eighth Amendment, and criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed.' " Miller, 132 S. Ct. at 2462 (quoting Graham, 560 U.S. at 75).

The Supreme Court agreed, "reversed the sentences imposed and held that 'mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " Falcon, 162 So. 3d at 959 (quoting Miller, 130 S. Ct. at 2011). The Court reasoned that "Roper and Graham establish that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, we explained, 'they are less deserving of the most severe punishments.' " Miller, 132 S. Ct. at 2464 (quoting Graham, 560 U.S. at 68).

While Roper established a flat rule banning the death penalty for juvenile offenders, and Graham established a flat rule banning the imposition of a life

sentence without parole for juvenile offenders who commit nonhomicide offenses, Miller "set out a different [rule] (individualized sentencing) for homicide offenses." Miller, 132 S. Ct. at 2466 n.6. Miller's rule of individualized sentencing for juvenile offenders is given effect through a "hearing where 'youth and its attendant characteristics' are considered as sentencing factors," since such a hearing "is necessary to separate those juveniles who may be sentenced to life without parole from those who may not." Montgomery, 136 S. Ct. at 735 (quoting Miller, 132 S. Ct. at 2460) (internal citation omitted). As the Supreme Court has explained, "The hearing does not replace but rather gives effect to Miller's substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." Id. (emphasis added).

Miller, then, requires that a sentencer consider the juvenile offender's "chronological age and its hallmark features" before imposing sentence. A sentencer must "consider[] a juvenile's lessened culpability and greater capacity for change" as compared to an adult. Miller, 132 S. Ct. at 2460 (internal quotation omitted). The sentencer must consider the juvenile offender's "lack of maturity and [] underdeveloped sense of responsibility," that lead to "recklessness, impulsivity, and heedless risk-taking." Id. at 2464 (internal quotation omitted). The Supreme Court's requirement of individualized sentencing for juvenile offenders forbids a sentencer from "treat[ing] every child as an adult," because

- 12 -

doing so inevitably ignores the "incompetencies associated with youth," and

"disregards the possibility of rehabilitation even when the circumstances most

suggest it." Id. at 2468. As the Supreme Court recently explained in Montgomery,

Miller:

> [D]id more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of "the distinctive attributes of youth." Id., at ——, 132 S. Ct., at 2465. Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects " 'unfortunate yet transient immaturity.' " Id., at ———, 132 S. Ct., at 2469 (quoting Roper, 543 U.S., at 573, 125 S. Ct. 1183). Because Miller determined that sentencing a child to life without parole is excessive for all but " 'the rare juvenile offender whose crime reflects irreparable corruption,' " 567 U.S., at ——, 132 S. Ct., at 2469 (quoting Roper, supra, at 573, 125 S. Ct. 1183), it rendered life without parole an unconstitutional penalty for "a class of defendants because of their status"—that is, juvenile offenders whose crimes reflect the transient immaturity of youth. Penry [v. Lynaugh, 492 U.S. 302, 330 (1989)].

Montgomery, 136 S. Ct. at 734 (emphasis supplied). In discussing the procedural

component of the Miller decision, the Montgomery Court noted that

"Miller requires a sentencer to consider a juvenile offender's youth and attendant

characteristics before determining that life without parole is a proportionate

sentence." Id. As the Court explained, just because "Miller did not impose a

formal factfinding requirement does not leave States free to sentence a child whose

crime reflects transient immaturity to life without parole. To the contrary, Miller

- 13 -

established that this punishment is disproportionate under the Eighth Amendment." Id. at 735.

**II. Giving Effect to Miller: This Court's Recent Juvenile Sentencing Decisions & Chapter 2014-220, Laws of Florida**

After Miller, we were confronted with two questions regarding the effect of the decision in this State: First, whether the rule announced in Miller applied retroactively; and second, what the proper remedy was for a Miller violation. As to the first question, we concluded that "Miller constitute[ed] a 'development of fundamental significance' and therefore must be given retroactive effect." Falcon, 162 So. 3d at 956.

Regarding the proper remedy for a Miller violation, we unanimously adopted the individualized sentencing approach that the Florida Legislature provided during the 2014 Regular Session "to remedy the federal constitutional infirmities in Florida's juvenile sentencing laws, as identified by the Supreme Court in Miller and Graham." Horsley, 160 So. 3d at 401. As we explained, the new sentencing legislation of Chapter 2014-220, Laws of Florida, "address[ed] the concerns of Miller," id. at 405, and provided explicit guidance for juvenile offenders convicted of a life felony:

> A similar sentencing structure applies to those juvenile offenders convicted of life or first-degree felony homicide offenses. Life imprisonment remains a possibility if the trial court conducts an individualized sentencing proceeding, with mandatory subsequent judicial review available for those juvenile offenders who "actually

- 14 -

killed, intended to kill, or attempted to kill" that are sentenced to a term of imprisonment of more than twenty-five years. For those offenders in this category who "did not actually kill, intend to kill, or attempt to kill," the subsequent judicial review is available for a sentence of more than fifteen years.

Id. at 404 (internal citations omitted). See §§ 775.082, 921.1401, and 921.1402, Fla. Stat. (2014).

Unlike the statute Landrum was sentenced under—which did not provide for, or much less suggest, factors a sentencing court should consider relating to the juvenile offender's youth and its attendant characteristics as described in Miller— Section 921.1401 provides for the appropriate sentencing factors a trial court must consider that are "relevant to the offense and the defendant's youth and attendant circumstances" when determining if a juvenile offender should be sentenced to life imprisonment, including:

(a) The nature and circumstances of the offense committed by the defendant.
(b) The effect of the crime on the victim's family and on the community.
(c) The defendant's age, maturity, intellectual capacity, and mental and emotional health at the time of the offense.
(d) The defendant's background, including his or her family, home, and community environment.
(e) The effect, if any, of immaturity, impetuosity, or failure to appreciate risks and consequences on the defendant's participation in the offense.
(f) The extent of the defendant's participation in the offense.
(g) The effect, if any, of familial pressure or peer pressure on the defendant's actions.
(h) The nature and extent of the defendant's prior criminal history.

- 15 -

(i)  The effect, if any, of characteristics attributable to the defendant's youth on the defendant's judgment.

(j)  The possibility of rehabilitating the defendant.

§ 921.1401(2), Fla. Stat. (2014).  Section 921.1402 additionally provides the relevant factors a court should consider during a "sentence review hearing to determine whether the juvenile offender's sentence should be modified." § 921.1402(6), Fla. Stat. (2014).  One of those factors is "Whether the juvenile offender's age, maturity, and psychological development at the time of the offense affected his or her behavior."  § 921.1402(6)(f), Fla. Stat. (2014).

None of the Miller factors as now codified in section 921.1401 existed in the sentencing scheme under which Landrum was sentenced, and the sentencing court's discretion to impose a life sentence was without restriction.  See § 775.082(3)(a)3., Fla. Stat. (2004).  The State, however, argues that because Miller held unconstitutional sentences of life imprisonment without parole imposed upon juveniles pursuant to mandatory sentencing schemes, and Landrum's life imprisonment without parole sentence was imposed pursuant to a discretionary sentencing scheme, Miller does not apply.

We disagree with the State. The basis for the violation of the Eighth Amendment and the prohibition in article I, section 17, of the Florida Constitution against "Excessive Punishments," does not emanate from the mandatory nature of the sentence imposed.  Rather, the violation emanates from the United States

- 16 -

Supreme Court's command that because children are "constitutionally different," Miller, 132 S. Ct. at 2464, the Eighth Amendment requires that sentencing of juvenile offenders be individualized in order to separate the "rare" juvenile offender whose crime reflects "irreparable corruption," from the juvenile offender whose crime reflects "transient immaturity." Montgomery, 136 S. Ct. at 734. Indeed, Justice Sotomayor recently reemphasized that "lower courts must instead ask the difficult but essential question whether [juvenile offenders before the court for sentencing] are among the very 'rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility.' " Adams v. Alabama, 578 U.S., at——, 2016 WL 2945697, at *4 (May 23, 2016) (Sotomayor, J., concurring) (quoting Montgomery, 136 S. Ct. at 734). As Judge Posner, writing for the Seventh Circuit Court of Appeals, recently explained of Miller, "[t]he relevance to sentencing of 'children are different' also cannot in logic depend on whether the legislature has made the life sentence discretionary or mandatory; even discretionary sentences must be guided by consideration of age-relevant factors." McKinley v. Butler, 809 F.3d 908, 911 (7th Cir. 2016).

Indeed, the Supreme Court's recent decision in Montgomery clarified that the Miller Court had no intention of limiting its rule of requiring individualized sentencing for juvenile offenders only to mandatorily-imposed sentences of life without parole, when a sentencing court's exercise of discretion was not informed

by <u>Miller</u>'s considerations.  <u>See</u> <u>Montgomery</u>, 136 S. Ct. at 735.  A contrary interpretation of the <u>Miller</u> holding would mean that sentencing juveniles to life imprisonment would not be, as the Supreme Court has stated in its juvenile sentencing precedent, "rare" and "uncommon."  <u>Miller</u>, 132 S. Ct. at 2469.

We conclude that at the heart of <u>Miller</u>, as further amplified in <u>Montgomery</u>, is the Eighth Amendment's prohibition of imposing certain punishments on juvenile offenders that fail to consider a juvenile's "lessened culpability and greater capacity for change."  <u>Horsley</u>, 160 So. 3d at 396 (citing <u>Miller</u>, 132 S. Ct. at 2460) (internal quotations omitted).  Therefore, the exercise of a sentencing court's discretion when sentencing juvenile offenders must be informed by consideration of the juvenile offender's "youth and its attendant circumstances" as articulated in <u>Miller</u> and now provided for in section 921.1401.  Without this individualized sentencing consideration, a sentencer is unable to distinguish between juvenile offenders whose crimes "reflect transient immaturity" and those whose crimes reflect "irreparable corruption."  <u>Miller</u>, 132 S. Ct. at 2469.  Failing to make this distinction, otherwise, would mean life sentences for juveniles would not be exceedingly rare, but possibly commonplace.

### III.  Landrum's Sentence

This case dramatically demonstrates the Eighth Amendment problem of a life-without-parole sentence imposed upon a juvenile offender when the

- 18 -

sentencer's discretion is not guided by the individualized sentencing factors deemed constitutionally significant in Miller. As a sixteen year old convicted of second-degree murder, Landrum faced a sentence of between 22.3 years and life imprisonment for that offense. This was the same sentencing range she would have been subject to if she had been an adult. Certainly, the sentencing court was aware of Landrum's age and that her family members still considered her "a child," but there is no indication that the court, when exercising its discretion to sentence Landrum to life imprisonment as opposed to a term-of-years sentence, considered the "distinctive attributes of youth" as articulated in Miller. In fact, it appears just the opposite. When sentencing Landrum, a juvenile offender, the trial court stated only the following: "Miss Landrum, it's the judgment, order and sentence of the Court that you be adjudicated guilty of the offense of murder in the second degree and confined in state prison for the remainder of your natural life therefore. Any questions about that?"

Without the benefit of Miller and its progeny, the sentencing court did not indicate why Landrum's crimes warranted imposition of a life-without-parole sentence as opposed to a term-of-years sentence, nor did the court consider that the juvenile offender was only sixteen years old at the time of the crimes. Although the sentencing court recognized the circumstances of the crime did not warrant that the jury consider first-degree murder, it did not consider whether the crime itself

- 19 -

reflected "transient immaturity" rather than "irreparable corruption." See Miller, 132 S. Ct. at 2469. And most certainly, the sentencing court did not consider why, although a life sentence for a juvenile offender should be exceedingly "rare" and "uncommon," Landrum should receive such an uncommon and exceedingly rare life sentence, rather than a 22.3 year guideline sentence, or even one that departed downward from the guideline sentence. Moreover, at the time the sentencing court exercised its discretion in deciding that Landrum should never see the outside of prison walls for a crime she committed at age sixteen, the only guidance the sentencing court had in considering Landrum's "youth and its attendant characteristics" was the Legislature's directive that a sentencing court could consider as a mitigating circumstance when departing downward from the term-of-years sentence that, "[a]t the time of the offense the defendant was too young to appreciate the consequences of the offense." § 921.0026(2)(k), Fla. Stat. (2004).

This cursory acknowledgement of a juvenile offender's youth and how its attendant characteristics counseled against sentencing the juvenile offender to a lifetime of incarceration in the sentencing scheme Landrum was sentenced under is vastly different from the sentencing factors Miller prescribes, and which are now codified in section 921.1401(2), Florida Statutes (2014). These sentencing factors include consideration of the "defendant's age, maturity, intellectual capacity, and mental and emotional health at the time of the offense," section 921.1401(2)(c),

- 20 -

and the "effect, if any, of familial pressure or peer pressure on the defendant's actions," section 921.1401(2)(g), as well as the "effect, if any, of immaturity, impetuosity, or failure to appreciate risks and consequences on the defendant's participation in the offense." § 921.1401(2)(e). Miller's emphasis on the rarity of life imprisonment sentences for juvenile offenders, coupled with absence of any consideration of the distinctive attributes of youth by Landrum's sentencing court, render Landrum's sentence unconstitutional under the Eighth Amendment as construed by Miller.

Further, permitting a life-without-parole sentence for a juvenile offender convicted of second-degree murder that was imposed without the sentencer considering the "distinctive attributes of youth" would be grossly disproportionate when juvenile offenders convicted of the more serious charge of first-degree murder and sentenced to life imprisonment will receive the benefit of chapter 2014-220, Laws of Florida (2014). This sentencing legislation was "designed to bring Florida's juvenile sentencing statutes into compliance with the United States Supreme Court's recent Eighth Amendment juvenile sentencing jurisprudence." Horsley, 160 So. 3d at 39; §§ 775.082, 921.1401, 921.1402, Fla. Stat. (2014). As the Second District explained, "a juvenile convicted of first-degree murder enjoys the right to eventual review of his or her sentence without regard to the date of his or her offense while a juvenile convicted of second-degree murder and sentenced

to life before the effective date of the new legislation does not." Landrum, 163 So. 3d at 1263. Simply put, "[c]onsiderations of fairness and uniformity make it very 'difficult to justify depriving a person of his liberty or his life, under process no longer considered acceptable and no longer applied to indistinguishable cases.' " Falcon, 162 So. 3d at 962 (quoting Witt v. State, 387 So. 2d 922, 925 (Fla. 1980)).

The sentencing scheme under which Landrum was sentenced gave the trial court unfettered discretion when choosing between sentencing a juvenile offender convicted of second-degree murder to a term-of-years sentence or a life-without-parole sentence. While we acknowledge the possibility that a sentencer could have exercised discretion under this scheme in a manner that demonstrated the sentencer considered the factors Miller has since deemed constitutionally significant—and the resulting sentence would therefore not violate Miller—this did not happen in Landrum's case. The resulting, non-individualized sentence was the likely result of a decision not informed by the "distinctive attributes of youth." Miller, 132 S. Ct. at 2465. A juvenile offender convicted of the same offense today, however, will receive the benefit of the new sentencing legislation's requirement of individualized consideration that Miller requires, as well as the expression of this Court and the United States Supreme Court that sentencing a juvenile offender to life imprisonment without parole should be "rare" and "uncommon," and that the juvenile offender whose crime reflects "transient immaturity" must be given some

"hope for some years of life outside prison walls." Montgomery, 136 S. Ct. at 736-37.

## CONCLUSION

The Supreme Court's emphasis in Miller that the "distinctive attributes of youth," prohibit automatically sentencing juvenile offenders to life imprisonment without first considering such attributes, coupled with the Supreme Court's recent characterization of Miller as prescribing a "hearing where 'youth and its attendant characteristics' are considered as sentencing factors," in order "to separate those juveniles who may be sentenced to life without parole from those who may not," Montgomery, 136 S. Ct. at 735 (citing Miller, 132 S. Ct. at 2460), leads us to conclude that Landrum's sentence is unconstitutional under the Eighth Amendment.

At the heart of Miller, Montgomery, and indeed the entirety of this Court's and the Supreme Court's recent juvenile sentencing jurisprudence interpreting the Eighth Amendment, is the axiom that "youth matters for purposes of meting out the law's most serious punishments." Horsley, 160 So. 3d at 399. Miller and Montgomery, together with Roper and Graham, require a sentencer to consider age-related evidence as mitigation, and permit the sentencing of a juvenile offender to life imprisonment only in the most "uncommon" and "rare" case where the

juvenile offender's crime reflects "irreparable corruption." Miller, 132 S. Ct. at 2469 (internal quotation omitted).

Landrum's life sentence without parole for second-degree murder per section 775.082(3)(a)3., Florida Statutes (2003), violated the Eighth Amendment. The sentencing scheme, which predated Miller and its progeny, did not require the trial court to consider the "distinctive attributes of youth" when exercising its discretion in imposing a life sentence. Miller, 132 S. Ct. at 2465. Further, the sentencing scheme did not take into account that life sentences for youth should be "uncommon." Id. at 2469. Landrum's life-without-parole sentence for second-degree murder was imposed without individualized consideration of her youth and its attendant characteristics that is now necessary under Miller and this Court's juvenile sentencing jurisprudence. This absence of individualized sentencing consideration prevented Landrum from showing that her "crime did not reflect irreparable corruption; and, if it did not," that she must be given "hope for some years of life outside prison walls." Montgomery, 136 S. Ct. at 736-37.

We therefore quash the Second District's decision upholding Landrum's life-without-parole sentence and disapprove Lightsey v. State, 182 So. 3d 727 (Fla. 3d DCA 2015), Kendrick v. State, 171 So. 3d 778 (Fla. 2d DCA 2015), Lindsey v. State, 168 So. 3d 267 (Fla. 2d DCA 2015), Lane v. State, 151 So. 3d 20 (Fla. 1st DCA 2014), Mason v. State, 134 So. 3d 499 (Fla. 4th DCA 2014), and Starks v.

- 24 -

State, 128 So. 3d 91 (Fla. 2d DCA 2013), to the extent that they are inconsistent with this opinion.  We remand for resentencing in accordance with sections 775.082, 921.1401, and 921.1402, Florida Statues (2014).

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, CANADY, and PERRY, JJ., concur.
POLSTON, J., concurs in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

Second District - Case No. 2D14-2842

(Hillsborough County)

Howard L. Dimmig, II, Public Defender, and Maureen E. Surber, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; John M. Klawikofsky, Bureau Chief, Cerese Crawford Taylor, Assistant Attorney General, and Peter N. Koclanes, Assistant Attorney General, Tampa, Florida,

for Respondent