PERRY, J.,
dissenting.
I cannot agree with the majority’s decision to limit the retroactive application of Hurst v. Florida to those cases that were not final when the United States Supreme Court decided Ring. In my opinion, the line drawn by the majority is arbitrary and cannot withstand scrutiny under the Eighth Amendment because it creates an arbitrary application of law to two groups of similarly situated persons. Coupled with Florida’s troubled history in applying the death penalty in a discriminatory manner,[37] I believe that such an application is unconstitutional. I therefore dissent.
Asay will be the first white person executed for the murder of a black person in this State. See Frank R. Baumgartner, The Impact of Race, Gender, and Geography on Florida Executions, http://www. unc.edu/=fbaum/articles/Baumgartner-Florida-executions-Jan2016.pdf (January 14, 2016); (“No White person has been executed in Florida for a homicide involving a Black victim. In contrast, 71 percent of the executions carried out against Black inmates were for homicides involving White victims.”); see also Michael Radelet, Glenn L. Pierce, Choosing Those Who Will Die: Race and the Death Penalty in Florida, 43 Fla. L. Rev. 1 (1991). This sad statistic is a reflection of the bitter reality that the death penalty is applied in a biased and discriminatory fashion, even today. Indeed, as my retirement approaches, I feel compelled to follow other justices who, in the twilight of their judicial careers, determined to no longer “tinker with the machinery of death.” See, e.g., Callins v. Collins, 510 U.S. 1141, 1145, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994) (Black-mun, J., dissenting). The majority’s decision today leads me to declare that I no longer believe that there is a method of which the State can avail itself to impose the death penalty in a constitutional manner. Because the majority of this Court has already determined that Asay will be executed for his crimes, I limit the remainder of my discussion to the application of Hurst v. Florida to this case.
I would find that Hurst v. Florida applies retroactively, period. I therefore would not limit its application to cases final after June 24, 2002, when the United States Supreme Court issued its decision in Ring. I can find no support in the jurisprudence of this Court where we have previously determined that a case is only retroactive to a date certain in time. Indeed, retroactivity is a binary—either something is retroactive, has effect on the past, or it is not.
The majority’s opinion is inconsistent with our analysis of principles of fairness in our recent decision Falcon v. State, 162 So.3d 954 (Fla. 2015). In Falcon, this Court stated that the principles of fairness underlying the Witt analysis “make it very difficult to justify depriving a person of his liberty or his life, under process no longer considered acceptable and no longer applied to indistinguishable cases.” Falcon, 162 So.3d at 962. In Falcon, we found that applying a constitutional rule to some juvenile offenders but not to other similarly *38 situated juvenile offenders simply because of the date their sentences became final would result in unjust disparate treatment of similarly situated persons. Id.; see also Thompson v. Dugger, 515 So.2d 173 (Fla. 1987) (concluding that all death sentenced individuals, regardless of when their sentences became final, were entitled to seek relief in light of Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987)). Accordingly, we concluded that “[t]he patent unfairness of depriving indistinguishable juvenile offenders of them liberty for the rest of their lives, based solely on when their cases were decided, weighs heavily in favor of [retroactivity].” Falcon, 162 So.3d at 962.
Death penalty cases should be treated as a “class apart” from non-death penalty cases. Furman v. Georgia, 408 U.S. 238, 285-87, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). We have consistently noted that “death is different” and as such, required careful consideration by the judiciary. Robertson v. State, 143 So.3d 907, 912 (Fla. 2014) (Florida jurisprudence “begins with the premise that death is different.”); Yacob v. State, 136 So.3d 539, 546 (Fla. 2014) (“[T]his Court’s automatic, mandatory, and statutorily required review of death penalty cases ‘must begin with the premise that death is different.’ ”); Ocha v. State, 826 So.2d 956, 964 (Fla. 2002) (“This Court has long adhered to the idea that [i]n the field of criminal law, there is no doubt that ‘death is different.’ ”); Swafford v. State, 679 So.2d 736, 740 (Fla. 1996) (“[O]ur jurisprudence also embraces the concept that ‘death is different’ and affords a correspondingly greater degree of scrutiny to capital proceedings.”). In its decision today, this Court chooses not to minimize the risk of wholly arbitrary and capricious implantation of the death penalty.
In the present case, the majority strays from its reasoning in Falcon and decides that in capital cases where the Sixth Amendment rights of hundreds of persons were violated, it is appropriate to arbitrarily draw a line between June 23 and June 24, 2002—the day before and the day after Ring was decided. The majority does not offer a convincing rationale as to why 173 death sentenced persons should be treated differently than those whose sentences became final post-Ring, while overestimating the burden that these 173 capital cases will place on the judiciary. Because “death is different,” retroactive application of Hurst v. Florida to all death sentenced persons cannot be justified by the mere fact that it will be harder to grant a new penalty phase or other relief to 173 additional persons.
One of the reasons given for this arbitrary line in the sand is the administration of justice.[38] The majority opines that penalty phase proceedings are time intensive endeavors that require the State to present evidence from the guilt phase in addition to penalty-phase-specific evidence and that the jurors’ ability to weigh the testimony of witnesses who may no longer be available will be impacted. Indeed, the majority claims that the greater the time since the crime, the more difficult a new penalty phase will be. Undoubtedly, there will be situations where persons who committed equally violent felonies and whose death sentences became final days apart will be treated differently without justification from this Court. However, because death row defendants have succeeded in having convictions and sentences vacated for crimes that were committed long before Ring was decided and now have new sentences that became final after Ring was decided, the majority’s conclusion is undermined and the application is arbitrary.
*39 I submit that there is a more logical way to provide finality to the victims’ families without violating the Eighth Amendment. First, the majority has overstated the effect of retroactivity on the administration of justice: the effect would not be substantial. The retroactive application of Hurst v. Florida would affect only capital cases. Although they are generally more complex and require more judicial resources than other types of cases, capital cases make up only a small percentage (0.09 percent) of the 171,414 criminal cases filed in circuit court during the fiscal year 2014-15, and an even smaller percentage (0.02 percent) of the 753,011 total cases filed in circuit court. See Office of the State Courts Admin’r, Florida’s Trial Courts Statistical Reference Guide: FY 2014-15, ch. 2, at 4 (2015), http://flcourts.org/core/fileparse. php/541/urlV20150901-Chapter-2_Overall-Statistics_accessible.pdf. In light of this Court’s mandatory jurisdiction over capital cases and the statutory requirement that capital cases be prosecuted in circuit court, the new rule would have no effect on either the district courts or county courts.
Moreover, because the majority opines that a new penalty phase is required in these cases, the burden on state attorneys, defense counsel, and the judiciary is not as great as if the convictions were vacated. However, even this burden could be eliminated if the Court were to abide by the Legislature’s directive in section 775.082(2), Florida Statutes. In so doing, these capital defendants would receive life sentences, new penalty phase proceedings would be unnecessary, and the burden on the administration of justice would be nil. In other words, this Court has rejected an available remedy that creates no burden but then pronounces that the burden is far too great to provide equal application to similarly situated defendants. In short, there will be situations where persons who committed equally violent felonies and whose death sentences became final days apart will be treated differently without justification from this Court.
For example, Asay committed two murders on the night of July 17, 1987. His sentence became final on October 7, 1991, when the United States Supreme Court denied certiorari. See Asay v. Florida, 502 U.S. 895, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991). Asay’s nine-to-three jury recommendation that resulted in a death sentence would not be constitutional if Hurst v. Florida applied to him, but the majority holds that he is not entitled to the Sixth Amendment protections articulated in Hurst v. Florida.[39] Yet, under the present majority’s decision, another defendant who committed his offense on an earlier date *40 but had his sentence vacated and was later resentenced after Ring, cannot receive the death penalty without the protections articulated in Hurst.[40] Timothy Hurst committed his crimes on May 2, 1990, and was originally sentenced on April 26, 2000, which was final October 21, 2002, a few short months after the decision in Ring.[41] The majority’s application of Hurst v. Florida makes constitutional protection depend on little more than a roll of the dice. This cannot be tolerated.
In light of the relatively few number of capital cases in proportion to the judiciary’s entire caseload and the fact that Hurst v. Florida requires either only new penalty proceedings or no new proceedings at all, the administration of justice would not be over-burdened by the retroactive application of Hurst v. Florida. The United States Supreme Court has previously applied new constitutional rules retroactively despite significantly greater burdens on judicial administration. For instance, when the United States Supreme Court made retroactive its holding that no juvenile may be sentenced to life in prison without some opportunity for release, it entitled some 2296 prisoners nationwide to resentencing proceedings or parole hearings. See Montgomery v. Louisiana, _ U.S. _, 136 S.Ct. 718, 736, 193 L.Ed.2d 599 (2016); John R. Mills, et al., Juvenile Life Without Parole in Law and Practice: Chronicling the Rapid Change Underway, 65 Am. U. L. Rev. 535, 570 n.215 (2016). Following the United States Supreme Court’s decision to require states to provide counsel to indigent defendants even in noncapital cases, this Court noted that the decision could require not just new sentencing proceedings but entirely new trials for 4542 prisoners, representing over half of Florida’s entire prison population. Roy v. Wainwright, 151 So.2d 825, 827 (Fla. 1963) (“The Division of Corrections reports that as of June 30, 1962, there were approximately 8,000 State prisoners in custody. Of this group 4,065 entered pleas of guilty without the benefit of counsel. Four hundred, seventy-seven (477) entered pleas of not guilty but were convicted without benefit of counsel.”). The impact of Hurst v. Florida to the administration of justice pales in comparison.
Because I would find that Asay is entitled to the constitutional protections articulated in Hurst v. Florida, I turn now to what I would find to be the appropriate remedy. As I explained fully in Hurst v. State, 202 So.3d 40, 75-76 (Fla. 2016), there is no compelling reason that the plain language of section 775.082(2), Florida Statutes, does not apply to this case. Because his death sentence is unconstitutional, Asay is entitled to the remedy that the Legislature has specified: the sentencing court must vacate his death sentence and sentence him to life in prison. See § 775.082(2), Fla. Stat. (2015) (“In the event the death penalty in a capital felony is held to be unconstitutional by the Florida Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death for a capital felony shall cause such person to be brought before the court, and *41 the court shall sentence such person to life imprisonment as provided in subsection
The plain language of the statute does not rely on a specific amendment to the United States Constitution, nor does it refer to a specific decision by this Court or the United States Supreme Court. Further, it does not contemplate that all forms of the death penalty in all cases must be found unconstitutional. Instead, the statute uses singular articles to describe the circumstances by which the statute is to be triggered. Indeed, the statute repeatedly references a singular defendant being brought before a court for sentencing to life imprisonment.
Hurst v. State, 202 So.3d at 75-76 (Perry, J., concurring in part and dissenting in part).
The sentencing court unconstitutionally imposed the death penalty on Asay. Accordingly, “the death penalty in [Asay’s] capital felony [has been] held to be unconstitutional,” and accordingly, “the court having jurisdiction over [Asay who was] previously sentenced to death for a capital felony shall cause [him] to be brought before the court, and the court shall sentence [him] to life imprisonment.” Id. We need conduct no further legal gymnastics to carry out the will of the Legislature. See, e.g., English v. State, 191 So.3d 448, 450 (Fla. 2016) (“When the statutory language is clear or unambiguous, this Court need not look behind the statute’s plain language or employ principles of statutory construction to determine legislative intent.”). The sentencing court must impose a life sentence pursuant to section 775.082(2), Florida Statutes.

. I am aware of the irony of this statement in this particular case. It does not escape me that Mark Asay is a terrible bigot whose hate crimes are some of the most deplorable this State has seen in recent history. However, it is my sworn duty to uphold the constitution of this state and of these United States and not to ensure retribution against those whose crimes I find personally offensive.

. I agree with the majority that Witt is the appropriate test to determine retroactivity.

. Furthermore, in today’s decision, the Court declines to extend relief to Asay despite the fact that his nine-to-three jury recommendation violates our decision in Hurst v. State, which interpreted Hurst v. Florida and state law to require both unanimous jury findings and a unanimous jury verdict to impose the death penalty. See Hurst v. State, 202 So.3d 40, 44 (Fla. 2016) (“In capital cases in Florida, these specific findings required to be made by the jury include the existence of each aggravating factor that has been proven beyond a reasonable doubt, the finding that the aggravating factors are sufficient, and the finding that the aggravating factors outweigh the mitigating circumstances. We also hold, based on Florida's requirement for unanimity in juiy verdicts, and under the Eighth Amendment to the United States Constitution, that in order for the trial court to impose a sentence of death, the jury’s recommended sentence of death must be unanimous,”); see also id. at 57 ("[Bjefore the trial judge may consider imposing a sentence of death, the jury in a capital case must unanimously and expressly find all the aggravating factors that were proven beyond a reasonable doubt, unanimously find that the aggravating factors are sufficient to impose a death, unanimously find that the aggravating factors outweigh the mitigating circumstances, and unanimously recommend a sentence of death.”)

. See, e.g., Johnson v. State, No. SC14-1175, 205 So.3d 1285, 1286-87, 2016 WL 7013856, op. at 1 (Fla. Dec. 1, 2016) (Johnson was convicted for multiple murders occurring on January 8 and 9, 1981, and his sentences became final on February 21, 1984. Subsequently, this Court vacated Johnson's sentences and remanded for a new penalty phase. This Court vacated Johnson’s death sentence "[bjecause the jury that recommended Johnson’s death sentences did not find the facts necessary to sentence him to death

. Hurst’s sentence was later vacated in 2009,