# Third District Court of Appeal

## State of Florida

Opinion filed November 28, 2018.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D16-1903
Lower Tribunal No. 94-33949 B

————————————

**Franchot Brown,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Rodolfo A. Ruiz and Michael A. Genden, Judges.

McLain Law, P.A., and Matthew R. McLain (Longwood), for appellant.

Pamela Jo Bondi, Attorney General, and Jonathan Tanoos, Assistant Attorney General, for appellee.

Before ROTHENBERG, C.J., and FERNANDEZ and LUCK, JJ.

ROTHENBERG, C.J.

Franchot Brown ("Brown") appeals his sentence for first degree murder.

Based on the Florida Supreme Court's decision in <u>Williams v. State</u>, 242 So. 3d 280 (Fla. 2018), decided during the pendency of this appeal, and our review of the record, we affirm.

## **PROCEDURAL HISTORY**

On or about November 2, 1994, Brown was indicted for the crimes of first degree murder, attempted armed robbery, and burglary with an assault or battery while armed, offenses committed on August 27, 1994, while Brown was seventeen years old. Brown proceeded to trial and was found guilty of first degree murder with a firearm personally used by Brown and attempted robbery with a firearm personally used by Brown. On January 27, 1999, he was adjudicated guilty and sentenced to life without the possibility of parole for his conviction for first degree murder and four years imprisonment for his conviction for attempted armed robbery, with each sentence to run concurrent. The judgment and sentences were subsequently affirmed on appeal. <u>See</u> <u>Brown v. State</u>, 751 So. 2d 580 (Fla. 3d DCA 2000).

After filing several unsuccessful motions, petitions, and appeals, on June 25, 2015, Brown filed another pro se motion to vacate and/or correct an illegal sentence based, this time, on the United States Supreme Court's decision in <u>Miller v. Alabama</u>, 567 U.S. 460 (2012) (concluding that a life without parole sentence for a juvenile offender who was convicted of a homicide constitutes cruel and

2

unusual punishment in violation of the Eighth Amendment). The trial court appointed counsel to represent Brown, and Brown's appointed counsel filed an amended motion on September 21, 2015, contending that, based on Miller, Brown must be resentenced, and when resentenced he must be resentenced under section 775.082(1)(b)2., Florida Statutes (2015), not section 775.082(1)(b)1., Florida Statutes (2015).

The trial court granted Brown's motion to vacate his life sentence, and after conducting a new sentencing hearing on June 24, 2016, at which ten witnesses, including Brown, testified, and reading the entire trial transcript, the trial court sentenced Brown to forty-five years' incarceration with credit for all time previously served. Brown does not appeal his forty-five year sentence. The sole issue raised on appeal is the propriety of the trial court's application of section 775.082(1)(b)1. when sentencing Brown.

During the pendency of Brown's appeal, the Florida Supreme Court had before it the same issue that has been raised in Brown's appeal. This Court, therefore, stayed Brown's appeal pending the Florida Supreme Court's review of the Fifth District Court of Appeal's decision in Williams v. State, 211 So. 3d 1070 (Fla. 5th DCA 2017). The Florida Supreme Court has now issued its opinion in Williams v. State, 242 So. 3d 280 (Fla. 2018), and thus we perform our analysis under the Florida Supreme Court's decision in Williams.

3

## ANALYSIS

The issue on appeal is the trial court's application of section 775.082(1) when it resentenced Brown. In <u>Horsley v. State</u>, 160 So. 3d 393, 405 (Fla. 2015), the Florida Supreme Court concluded that the appropriate remedy for juveniles whose sentences are unconstitutional under <u>Miller</u> is to resentence them in conformity with Chapter 2014-220, Laws of Florida. Chapter 2014-220 was enacted to bring Florida's juvenile sentencing law in compliance with the United States Supreme Court's Eighth Amendment jurisprudence. Thus, section 775.082(1) was amended, in pertinent part, to include the following provisions:

> (b)1. **A person who actually killed, intended to kill, or attempted to kill the victim** and who is convicted under s. 782.04 of a capital felony, or an offense that was reclassified as a capital felony, which was committed before the person attained 18 years of age shall be punished by a term of imprisonment for life if, after a sentencing hearing conducted by the court in accordance with s. 921.1401, the court finds that life imprisonment is an appropriate sentence. **If the court finds that life imprisonment is not an appropriate sentence, such person shall be punished by a term of imprisonment of at least 40 years. A person sentenced pursuant to this subparagraph is entitled to a review of his or her sentence in accordance with s. 921.1402(2)(a).**

> (b)2. **A person who did not actually kill, intend to kill, or attempt to kill the victim** and who is convicted under s. 782.04 of a capital felony, or an offense that was reclassified as a capital felony, which was committed before the person attained 18 years of age may be punished by a term of imprisonment for life or by a term of years equal to life if, after a sentencing hearing conducted by the court in accordance with s. 921.1401, the court finds that life imprisonment is

4

an appropriate sentence. **A person who is sentenced to a term of imprisonment of more than 15 years is entitled to a review of his or her sentence in accordance with s. 921.1402(2)(c).**
(emphasis added).

Based on these amendments, the Florida Legislature enacted section 921.1402, Florida Statutes (2017), and specifically subsection (2) which provides, in pertinent part, as follows:

(a)  A juvenile offender sentenced under s. 775.082(1)(b)1. is entitled to a review of his or her sentence after 25 years [unless the juvenile offender has been previously convicted of certain enumerated offenses that were part of a separate criminal transaction or episode].
. . . .

(c)  A juvenile offender sentenced to a term of more than 15 years under s. 775.082(1)(b)2., s. 775.082(3)(a)5.b., or s. 775.082(3)(b)2.b. is entitled to a review of his or her sentence after 15 years.

Thus, a juvenile who actually killed, intended to kill, or attempted to kill the victim and who is not sentenced to life imprisonment must be sentenced to a minimum of forty years imprisonment under section 775.082(1)(b)1. and he is entitled to a review of his sentence after serving twenty-five years.  However, a juvenile who did not actually kill, intend to kill, or attempt to kill the victim must be sentenced under section 775.082(1)(b)2., and under this provision, there is no minimum sentence that must be imposed and if he is sentenced to a term of more than fifteen years, he is entitled to a review of his sentence after fifteen years.

The question in this case is who must make the determination as to whether Brown actually killed, intended to kill, or attempted to kill the victim—the judge or

5

the jury?  The Florida Supreme Court has now answered that question in Williams.

The Florida Supreme Court in Williams held that, based on the United States

Supreme Court's decision in Alleyne v. United States, 570 U.S. 99 (2013), the jury

must make this factual finding, but the Court additionally concluded that "Alleyne

violations" are subject to a harmless error analysis.  Williams, 242 So. 3d at 282.

The Court reasoned that:

> Because a finding of actual killing, intent to kill, or attempt to kill aggravates the legally prescribed range of allowable sentences by increasing the sentencing floor from zero to forty years and lengthening the time before which a juvenile offender is entitled to a sentence review from fifteen to twenty-five years, this finding is an "element" of the offense, which Alleyne requires be submitted to a jury and found beyond a reasonable doubt.

Williams, 242 So. 3d at 288 (citations and internal quotation marks omitted).

However, because the Florida Supreme Court noted that this finding conflicted

with the Court's earlier ruling in Falcon v. State, 162 So. 3d 954 (Fla. 2015), the

Court receded from Falcon "to the extent it concludes this determination is to be

made by a trial court."  Williams, 242 So. 3d at 288 n.7.

A. **There was an Alleyne violation because it is unclear whether the jury found that Brown actually killed, intended to kill, or attempted to kill the victim**

In Williams, the Florida Supreme Court looked to the verdict form and jury

instructions to determine whether the jury found that the defendant actually killed,

intended to kill, or attempted to kill the victim.  The Williams jury found the

defendant guilty of first degree murder on a general verdict form.  Williams, 242

6

So. 3d at 283, 289. The jury was instructed that it could find the defendant guilty of first degree murder if it found that he committed premeditated murder, felony murder, or was involved in the murder as a principal. Id. at 288. Because the jury was instructed on three different theories of first degree murder, two of which did not require that the defendant actually killed, intended to kill, or attempted to kill the victim, the Court held "it cannot be determined from the general verdict form whether the jury found beyond a reasonable doubt that [the defendant] actually killed, intended to kill, or attempted to kill [the victim]." Id. "[B]ased on the instructions given," the Court explained, "the general guilty verdict for first-degree murder fails to demonstrate the jury found beyond a reasonable doubt that [the defendant] actually killed" the victim." Id. at 289. And "[w]hether the jury found beyond a reasonable doubt that [the defendant] intended to kill [the victim] cannot be determine from the verdict." Id. Unable to tell from the verdict form and jury instructions whether the jury made a clear finding that the defendant actually killed, intended to kill, or attempted to kill the victim, the Court found "an Alleyne violation." Id.

Here, also, the jury found by general verdict that Brown was guilty of first-degree murder, and the jury was instructed that Brown could be found guilty of first degree murder if the jury found that he committed premeditated murder, felony murder, or was involved in the murder as a principal. Thus, just as in

7

Williams, we are unable to determine from the general verdict under which theory the jury found Brown guilty of first-degree murder. Although premeditated murder could support a finding that Brown actually killed, intended to kill, or attempted to kill the victim, the other two theories – felony murder and guilty as a principal – do not clearly support such a finding. Because, as in Williams, we cannot determine from the verdict form whether the jury made the necessary finding, we too must find an Alleyne violation. But that does not end our analysis.

In the instant case, the jury found Brown guilty of first degree murder and specifically checked the boxes indicating that it was additionally finding that Brown committed the murder "with a firearm" and that the firearm was "personally used by [Brown]," However, because this was a multi-defendant case, with multiple theories upon which the jury could have reached its verdict, the determination of whether the trial court correctly applied section 775.082(1)(b)1. when resentencing Brown, cannot be made based on our review of the verdict form alone.

We specifically note, however, that this will not always be the case. For example, if the case is a single defendant case and the jury found the juvenile offender guilty of first degree murder with a firearm, then the reviewing court may be able to make a determination that the juvenile offender actually killed, intended to kill, or attempted to kill the victim by simply examining the charging document

8

and the verdict form.

B. **<u>Examination of the record demonstrates that the Alleyne violation is harmless beyond a reasonable doubt</u>**

As already discussed, the <u>Alleyne</u> violation is not fatal because, as the Florida Supreme Court held in <u>Williams</u>, it is subject to a harmless error analysis. <u>Williams</u>, 242 So. 3d at 292-93. In order to find that the <u>Alleyne</u> error is harmless pursuant to <u>Williams</u>, the record must "demonstrate beyond a reasonable doubt that a rational jury would have found that [Brown] actually killed, intended to kill, or attempted to kill [the victim]." <u>Id.</u> at 292. The "record" necessary to establish harmless error may, in some cases, only be the charging document and the verdict form, where in other cases, a review of the evidence may be required. In the instant case, we have reviewed the entire record, and based on the evidence presented in this case and the jury's findings, we conclude that the error was harmless beyond a reasonable doubt.

A review of the evidence and record in this case reflects the following. The victim, seventeen-year-old Ralphie Santana, was working with his sixteen-year-old brother, Alex, in a beeper store when Brown and two other individuals (identified by Brown during his pre-trial statement to the homicide detective as "Kevin" and "Mark") entered the store, each armed with firearms. According to Brown, he was armed with a .38 caliber or .357 caliber handgun, while Kevin and Mark were both armed with 9 millimeter handguns. Kevin and the victim (Ralphie) got into an

9

argument, and according to Brown in his pre-trial statement, Kevin pulled out his gun and pointed it at Ralphie's head, Ralphie reached for his own gun, shots were fired, and Brown pulled out his own gun and began firing. Ralphie sustained eleven gunshot wounds. He was shot in the face, in the chest, in the back, and on his arms and legs. Two of the gunshots were fired at close range and the only projectile of value that was recovered from Ralphie's body was fired from a .38 caliber revolver and was recovered from Ralphie's chest.

Six bullet casings were recovered from the scene and all of these casings were fired from a 9 millimeter handgun. Nine projectiles were also recovered. Eight of the nine projectiles that were recovered were from the scene and one was recovered from Ralphie's body. Three of the eight projectiles recovered from the scene were fired from a .38 caliber revolver, and, as stated earlier, the projectile recovered from Ralphie's body was also fired from a .38 caliber revolver. Ralphie's gun was fully loaded and none of the bullets were fired from his gun.

Although Brown told the detective who interviewed him that when he fired his gun he was pointing it at the ceiling, no bullet holes were found in the ceiling, and when the detective told Brown that bullets from both a .38 caliber firearm and a 9 millimeter handgun struck the victim, Brown conceded, "I guess I hit him." Additionally, "Kevin" (Kevin Wadley) testified at the trial that he, Mark Brisco, and Brown went into the beeper store while Robert Peterkin, who drove them to

10

the store, remained in the car. While looking at beepers, Brown got into an argument with the victim. Kevin, who believed the victim was attempting to reach for a gun, shot the victim. Then Brown shot the victim in the face at close range, and when the victim reached up to cover his face, Brown continued to shoot his gun, Kevin started firing his gun, and when the victim backed up towards the back room of the store, Kevin, Mark, and Brown left the store. When they all got into the car, Brown told Robert (the driver) what had happened and that he had shot the "clerk." Alex Santana, Ralphie's sixteen-year-old brother, was in the back room during the altercation, and although he heard the shots being fired, he did not witness the shooting.

Thus, based on Brown's own admission that he was armed with a .38 caliber handgun and that Kevin and Mark were armed with 9 millimeter handguns; Kevin's corroboration of this admission; and the undisputed physical evidence, Brown fired his .38 caliber handgun at least four times, and one of the four projectiles fired from Brown's gun struck the victim in the chest, and according to Kevin, the gunshot wound to the victim's face was also inflicted by Brown. Also, based on Brown's admissions to the detective and to Robert, at least one of the projectiles fired from Brown's gun, struck Ralphie. Lastly, according to the medical examiner, Ralphie's death was caused by "multiple gunshot wounds."

The evidence unequivocally establishes that Brown "actually killed"

11

Ralphie. That is because Brown admitted that he was the **only one** armed with a .38 caliber firearm, a .38 caliber projectile was recovered from Ralphie's chest, and the multiple gunshot wounds, including the gunshot wound to Ralphie's chest was the unrefuted cause of death. Additionally, when Brown was informed that the victim received bullet wounds from both a .38 and a 9 millimeter handgun, he stated, "I guess I hit him," and when he got into the waiting get-away car, he told the driver, Robert, that he had shot the clerk.

In Williams, the Florida Supreme Court held that:

> [T]he applicable question in evaluating whether an Alleyne violation is harmful with respect to section 775.082(1)(b) is whether the failure to have the jury make the finding as to whether a juvenile offender actually killed, intended to kill, or attempted to kill the victim contributed to his sentence—stated differently, whether the record demonstrates beyond a reasonable doubt that a rational jury would have found the juvenile actually killed, intended to kill, or attempted to kill the victim.

Williams, 242 So. 3d at 290. Brown contends that such a finding cannot be made in this case because: (1) he was charged, in the alternative, with first degree premeditated murder and felony murder and, although the jury found him guilty of first degree murder, the jury was not asked, and did not specify, whether they were finding him guilty of first degree premeditated murder or felony murder; (2) there were multiple perpetrators and the jury was given the option of finding him guilty of first degree murder as a principal. Based on the evidence in this case, we conclude that these arguments are without merit.

12

(1) The general verdict form

Section 775.082(1)(b)1. does not require a finding of premeditation. All that is required is that the defendant actually killed, intended to kill, or attempted to kill the victim. Thus, it does not matter if the jury found that Brown committed first degree premeditated murder or felony murder as long as the evidence establishes that he actually killed, intended to kill, or attempted to kill the victim.

Based on Brown's own admissions that: he was the only one armed with a .38 caliber handgun; he fired his handgun several times; and he must have shot the victim, plus the physical evidence that at least one of the shots fired by Brown struck Ralphie in the chest and killed Ralphie, the evidence, even in the light most favorable to Brown, (which is not even the test under Williams) unequivocally established that Brown "actually killed" the victim in this case.

(2) The principal theory

The same argument applies to consideration of the possibility that the jury convicted Brown under the principal theory. All four perpetrators were involved in the robbery and killing of the victim. At least two of those perpetrators, Brown and Kevin, discharged their firearms during commission of the robbery/homicide, with each firing their weapons multiple times. Ralphie sustained eleven gunshot wounds, and the physical evidence established that the .38 caliber projectile fired by Brown struck Ralphie in the chest and lodged itself in Ralphie's chest cavity.

13

The cause of death was multiple gunshot wounds. The jury also heard from Kevin that Brown additionally shot Ralphie in the face, and after shooting him in the face, he continued to shoot him.

We, therefore, conclude that under <u>Williams</u> "the record demonstrates beyond a reasonable doubt that a rational jury would have found [Brown] actually killed, intended to kill, or attempted to kill the victim." <u>Williams</u>, 242 So. 3d at 290. Thus, the <u>Alleyne</u> violation in the instant case is harmless beyond a reasonable doubt, and we affirm.

## CONCLUSION

The Florida Supreme Court has mandated that it is the jury, not the trial court, which must make the factual finding that the juvenile offender actually killed, intended to kill, or attempted to kill the victim in order to sentence a juvenile offender under section 775.082(1)(b)1. However, if we cannot determine whether the jury made such a finding by examining the verdict form, charging document, and jury instructions so as to trigger section 775.082(1)(b)1., the error is harmless if the record demonstrates beyond a reasonable doubt that a rational jury would have found that the juvenile actually killed, intended to kill, or attempted to kill the victim.

Based on the record in this case, we have made such a finding. The jury found Brown guilty of first degree murder and attempted armed robbery. The jury

14

also specifically found that Brown committed these offenses with a firearm that he actually used during the homicide and the attempted armed robbery. Additionally, Brown admitted that he was the only one armed with a .38 caliber firearm, that he discharged his firearm, and that he must have "hit" the victim. Ralphie died from multiple gunshot wounds, including a gunshot wound to his chest by a .38 caliber firearm. Accordingly, we find the Alleyne violation to be harmless beyond a reasonable doubt.

Affirmed.

**ANY POST-OPINION MOTION MUST BE FILED WITHIN SEVEN DAYS. A RESPONSE TO THE POST-OPINION MOTION MAY BE FILED WITHIN FIVE DAYS THEREAFTER.**